UNITED STATES of America, Appellee,

v.

William HARRISON, Jr., Appellant.

No. 81–5042.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 9, 1981.

Decided Jan. 7, 1982.

---

JoAnne B. Butt, Alexandria, Va. (Smith, Butt & Gold, Alexandria, Va., on brief), for appellant.

Joseph Reilly, Third Year Law Student (Justin W. Williams, U. S. Atty., Karen P. Tandy, Asst. U. S. Atty., Alexandria, Va., Laura H. Crocker, Third Year Law Student on brief), for appellee.

Before WIDENER, ERVIN and CHAPMAN, Circuit Judges.

ERVIN, Circuit Judge:

William Harrison, Jr. appeals his conviction in the United States District Court for the Eastern District of Virginia for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Harrison contends that the trial court erred in denying his motion to suppress incriminating statements and heroin obtained from him by agents of the Drug Enforcement Administration (DEA). His claim is based upon an airport stop that allegedly violated his Fourth Amendment right against unreasonable searches and seizures. Harrison also contends that there was insufficient evidence to support the conclusion that he had an intent to distribute. We find that Harrison's contentions are without merit and, accordingly, affirm the conviction.

I.

On October 9, 1980, Agents Gerald Whitmore and Robert McCracken of the DEA and Metropolitan Police Detective Roger Isaacs were monitoring certain flights at National Airport in Washington, D. C. in an effort to apprehend drug couriers unlawfully trafficking narcotics. The agents were observing passengers deplane a shuttle flight from New York City, a city known to be a source of narcotics distributed in the Washington, D. C. area, when they first noticed Harrison. Harrison, who carried no luggage and was among the last passengers to deplane, was looking around more than usual and made a peculiar head motion when he saw Agent Whitmore observing him. Agent Whitmore, who had more than seven years experience in narcotics detection, became suspicious of Harrison and proceeded with the other agents to follow Har-

rison through the airport concourse. Harrison walked very quickly as he passed the baggage claim and then proceeded up a flight of stairs, two steps at a time. When he leaned forward to climb the stairs, the agents noticed a four to six inch long bulge on Harrison's back beneath his jacket, which they observed for approximately eight seconds. The agents continued to follow Harrison as he darted toward an exit.

Harrison was outside at the end of a taxi cab line behind three or four people when the agents caught up with him. Agent Whitmore, who was dressed in plain clothes,[1] approached Harrison, identified himself as a federal agent, and said that he wanted to ask him a few questions. Detective Isaacs also identified himself to Harrison. Agent McCracken stood several feet away and remained in the background throughout the encounter with Harrison. Agent Whitmore asked Harrison his name but Harrison, who appeared nervous and fidgety, did not answer. He then asked to see Harrison's airline ticket. Harrison presented two tickets, one for a flight from Washington, D.C. to New York and the other for a return shuttle a few hours later, but claimed that he had no further identification.

Agent Whitmore then asked Harrison if he would step to a less crowded area at the side of the building for further questioning to avoid possible embarrassment. Harrison complied but asked why he had been stopped. Agent Whitmore stated in a normal tone of voice that he suspected Harrison was carrying narcotics to which Harrison responded "You got me." When Agent Whitmore asked Harrison for the narcotics, he removed two of four plastic bags from beneath his jacket. Officer Isaacs helped him remove the other two bags which were taped to his back. Harrison then was advised that he was under arrest for violating federal narcotics law and was given his *Miranda* warnings. Laboratory analysis revealed that the packets contained 489.7

grams of 52.8% pure heroin hydrochloride, which had a wholesale value of $500,000.

On the basis of these facts, Harrison's motion to suppress was denied. The district court concluded that the agents had a reasonable, articulable basis for their belief that Harrison was involved in criminal activity and that the stop, therefore, was justified and did not violate Harrison's Fourth Amendment rights.

## II.

### A.

The primary issue in this appeal is whether the district court erred in denying Harrison's motion to suppress both the statement "You got me" and the heroin subsequently seized. Harrison contends that the initial stop violated his Fourth Amendment rights because there were no specific, articulable indications of criminal activity to justify the stop.

In determining whether an airport stop violated a defendant's Fourth Amendment rights, courts first determine whether the airport stop was a "seizure" within the meaning of the Fourth Amendment. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). If it is determined that there was a "seizure," the court then must determine whether the agents had a reasonable, articulable suspicion justifying the stop. *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980).

Although the Supreme Court has recognized that the Fourth Amendment proscription against unreasonable searches and seizures "applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest," *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975), the Court also has recognized that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n.16,

---

**1.** Agents Whitmore and McCracken were wearing sports jackets and slacks and Detective Isaacs was wearing a suit.

88 S.Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968).[2] In *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), a case similar to that presented here,[3] the Court found that a person has been seized within the meaning of the Fourth Amendment only when the circumstances surrounding a detention would lead a reasonable person to believe that he was not free to leave.

■ We need not determine, however, whether or when Harrison was seized because even if he was seized within the meaning of the Fourth Amendment, we find that the stop was supported by a reasonable and articulable suspicion that Harrison was engaged in criminal activity. *See Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980).

Although the mere fact that an individual fits a drug courier profile[4] is not sufficient to constitute reasonable suspicion, *see id.* at 440–441, 100 S.Ct. at 2753–2754, this fact coupled with other suspicious circumstances may provide the reasonable grounds for suspicion required under the Fourth Amendment. *See id.*

■ In this case, Harrison not only fit the drug courier profile in that he had arrived from a known "source city," was among the last passengers to deplane, carried no luggage, appeared nervous and fidgety, and walked very quickly, *see United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), he also raised the agents' suspicion by making a peculiar head movement when he saw Agent Whitmore looking at him, climbed a stairwell quickly two steps at a time and had a four to six inch long bulge on his back beneath his jacket. While any one of these facts taken alone would not be sufficient to warrant reasonable suspicion, we find that the combination of factors gave the agents reasonable suspicion to justify the initial stop for routine questioning. Because the initial contact with Harrison was constitutionally permissible, we find that the trial court did not err in denying Harrison's motion to suppress the voluntary admission, "You got me," and the heroin subsequently seized.[5]

### B.

■ Harrison also contends that there was insufficient evidence to conclude that he possessed the heroin with an intent to distribute.

This court has established that the intent to distribute can properly be inferred from possession of a large quantity of narcotics. *See United States v. Welebir,* 498 F.2d 346, 350–351 (4th Cir. 1974). The court in *Welebir* stated that "it is a question to be determined on a case-by-case basis whether the quantity of illicit drugs in the particular case is sufficient to establish, absent any other evidence, intent to distribute." 498 F.2d at 351.

2. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry v. Ohio,* 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 1879 n.16, 20 L.Ed.2d 889 (1968).

3. In *Mendenhall,* DEA agents stopped a young woman in the airport, identified themselves as federal agents and asked to see her identification and airline ticket. The agents then asked if she would accompany them to a special office for further questioning. When they arrived at the office, the agents asked if they could search her person and handbag, although they apparently told her that she was free to leave. 446 U.S. at 549, 100 S.Ct. at 1874.

4. A drug courier profile is "an informally compiled abstract of characteristics thought typical of persons carrying illicit drugs." *United States v. Mendenhall,* 446 U.S. 544, 547, 100 S.Ct. 1870, 1873, 64 L.Ed.2d 497 (1980).

5. Harrison's argument that his admission "You got me" was not voluntary is not supported by the evidence in this case. The district court found that the incident occurred entirely in public, there was no show of force or weapons, and the officers talked in a normal tone of voice. Harrison himself initiated the discussion leading to the admission when he asked Agent Whitmore why he was being stopped. When Agent Whitmore responded that he thought Harrison was carrying narcotics on his back, Harrison spontaneously blurted out, "You got me."

We find that the evidence in this case is sufficient to support an inference of intent to distribute. The agents seized 498 grams of heroin with a wholesale value of approximately $500,000.[6]

We have carefully reviewed the record and applicable law as they pertain to Harrison's contentions, and find no error. Accordingly, Harrison's conviction is affirmed.

---

**6.** The heroin seized had a 52.8% purity value. The purity of street-use heroin is 2–5%.