UNITED STATES of America, Appellee,

v.

Reedo Eric CORBITT, Appellant.

No. 81–5075.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1982.
Decided April 15, 1982.

John A. Keats, Alexandria, Va. (Carla J. Smith, Alexandria, Va., on brief), for appellant.

Nash W. Schott, Asst. U. S. Atty., Alexandria, Va. (Justin W. Williams, U. S. Atty., Alexandria, Va., on brief), for appellee.

Before BUTZNER, Circuit Judge, JOE M. INGRAHAM, Senior Circuit Judge, for the Fifth Circuit, sitting by designation, and RUSSELL, Circuit Judge.

DONALD RUSSELL, Circuit Judge:

Reedo Eric Corbitt was charged in a two count indictment with interstate travel in aid of racketeering, a violation of 18 U.S.C. section 1952(a)(3), and possession of cocaine with intent to distribute, a violation of 21 U.S.C. section 841(a)(1). Three days after a hearing on the defendant's motion to suppress, the grand jury returned a superseding indictment that included a third count charging Corbitt with assault on a federal

officer engaged in official duties, a violation of 18 U.S.C. section 111. Following a non-jury trial, the court dismissed the racketeering charge and found Corbitt guilty on the narcotics and assault charges. This appeal followed.

In mid-October 1980, James E. Bradley, Jr., assigned as a detective with the Metropolitan Police Department, Washington, D.C. on special assignment with a task force of the federal Drug Enforcement Administration (DEA), received information regarding the defendant from an informant who had proved to be a reliable source on a number of prior occasions. The informant told Bradley that Corbitt was involved in the transport of cocaine from New York to Washington, D. C. on Thursdays and Fridays. Subsequently, on Friday, October 24, 1980, Bradley was stationed at Washington National Airport with DEA Special Agent Robert McCracken when the defendant deplaned from the 5:00 p. m. New York City shuttle.

Corbitt's casual attire caught the attention of McCracken, who signaled to Bradley. At the time, Corbitt was carrying two bags, a shoulder bag and a clear plastic bag, and walking in a nervous fashion. Upon making eye contact with Bradley, however, the defendant, who knew Bradley and was aware of Bradley's involvement in drug enforcement, took off running. McCracken and Bradley gave chase, following Corbitt up some stairs and across the upper terminal concourse. The officers quickly caught up with Corbitt, whereupon Corbitt stopped. In response to a question from McCracken, Corbitt denied having just arrived from New York. Because he then refused to allow a search of his shoulder bag, the officers informed the defendant that although he was free to leave, his shoulder bag would be detained until a search warrant had been procured. Twice, as Bradley reached for the bag, Corbitt pushed him away. The officers then arrested Corbitt for interfering with a federal investigation, informed him of his *Miranda* rights, and took him to the terminal's Federal Aviation Administration (FAA) police station.

At the station, Corbitt was again advised of his rights. Corbitt was a trained special metropolitan police officer and had extensive training regarding arrest procedures and his rights under *Miranda*. Corbitt's bags were placed on a Coke machine and, during a search of Corbitt's person, the officer recovered a piece of paper on which various figures were written. At approximately 5:30 p. m., DEA Supervisor Special Agent William Logay arrived and told Corbitt that Bradley was seeking a search warrant at the office of the United States Attorney. Corbitt responded by consenting to a search of his belongings. The defendant's shoulder bag was taken down from the top of a steel locker, and Corbitt himself removed a pair of socks containing a packet of white powder later identified by a DEA chemist as cocaine. Further searching of Corbitt's shoulder bag disclosed two additional packets of cocaine.

Corbitt has raised three issues on this appeal. First, he contends that the trial court erred in denying his motion to suppress evidence seized subsequent to his arrest. Corbitt maintains that the evidence was tainted by an unlawful arrest, that his arrest was an illegal pretext for a search. We are convinced, however, that the facts prove otherwise.

 Initially, the defendant was subject to no more than an investigatory stop of the type approved by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There is no question that the circumstances provided Bradley and McCracken with the reasonable and articulable suspicion required for such a stop. *See Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968); *United States v. Harrison*, 667 F.2d 1158, 1161 (4th Cir. 1982). Corbitt's Friday arrival in Washington, D. C. on a plane from New York, as predicted by the informant, his casual appearance and nervous behavior, and his flight upon recognizing Detective Bradley, known to him as

a drug enforcement officer, were more than adequate when combined with the information provided by a reliable informant to justify a brief stop of Corbitt for purposes of investigation.[1] Indeed, although we need not decide the issue, the officers at that point appear to have had probable cause to arrest Corbitt, especially after he denied having just arrived from New York. Sufficient facts corroborating the informant's tip apparently developed at the terminal to satisfy the two-pronged test for probable cause outlined by the Supreme Court in *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S.Ct. 1509, 1513, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). As we made clear in *United States v. Baker,* 577 F.2d 1147, 1150 (4th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978), probable cause arises consistently with the *Aguilar-Spinelli* test when facts corroborating an informant's tip become apparent prior to arrest.

Regardless of whether the officers had probable cause to arrest Corbitt prior to his shoving of Bradley, their reasonable and articulable suspicion was all that was necessary to make the seizure and detention of Corbitt's luggage reasonable within the meaning of the fourth amendment. *See United States v. Van Leeuwen,* 397 U.S. 249, 252–53, 90 S.Ct. 1029, 1032, 25 L.Ed.2d 282 (1970); *United States v. Benjamin,* 637 F.2d 1297, 1300–02 (7th Cir. 1981). Our conclusion is supported by the recent decisions of at least three other courts of appeals expressly upholding the detention of luggage suspected of containing narcotics to allow further investigation. *See United States v. Martell* 654 F.2d 1356, 1359–61 (9th Cir. 1981); *United States v. Viegas,* 639 F.2d 42, 45 (1st Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981); *United States v. Klein,* 626 F.2d 22, 25–26 (7th Cir. 1980). Detention of the

defendant's shoulder bag for a "limited time" pending the issuance of a search warrant was "the prudent act." *See* 397 U.S. at 253, 90 S.Ct. at 1032.

Notwithstanding the apparent existence of probable cause to arrest, the DEA officers told Corbitt that he was free to leave. Corbitt's physical efforts to keep possession of his shoulder bag and resistance of the officers, however, immediately gave rise to probable cause for his arrest on another charge. Detective Bradley was the victim of a federal offense, a violation of 18 U.S.C. section 111, committed in the presence of the officers. While the defendant's arrest on the assault charge was independent of and not a prerequisite for the detention of his luggage, the arrest was obviously legitimate, and the subsequent search of Corbitt's person in the police station was incident to that lawful arrest. Furthermore, despite the defendant's urgings to the contrary, the trial court's determination that Corbitt knowingly and voluntarily consented to a search of his shoulder bag is amply supported by the evidence. Corbitt's consent, therefore, made a search warrant unnecessary, and the evidence seized pursuant to the search was properly admitted.

Corbitt argues secondly that the third count of the superseding indictment should have been dismissed because of prosecutorial vindictiveness. He maintains that only three days after he filed his motion to suppress, the new indictment issued as a result of the Government's concern that the suppression motion would be granted. We are not persuaded, however, that the decision to seek the superseding indictment represented any " 'realistic likelihood of "vindictiveness." ' " *Bordenkircher v. Hayes,* 434 U.S. 357, 362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604 (1978) (quoting *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974)).

---

1. In *United States v. Harrison,* 667 F.2d 1158 (4th Cir. 1982), even without the corroborated tip of a reliable informant and the defendant's flight upon recognizing an agent, we held that a stop for questioning under circumstances similar to those in the instant case was based on reasonable suspicion. *See id.,* at 1161. The presence of those additional facts in this case simply reinforces our conviction that the action of the agents here was also grounded in reasonable, articulable suspicion.

In *Hayes*, the Supreme Court approved the return of a second more serious indictment, as threatened by the prosecutor, when the accused chose not to plead guilty during plea negotiations. As the Court stated in that case, "[i]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." 434 U.S. at 364, 98 S.Ct. at 668 (footnote omitted). In the instant case, Count III of the second indictment was unquestionably based on probable cause. Moreover, while we note the Government's position that matters warranting the new indictment were unknown until two days before the filing of motions, our decision does not require a finding to that effect. It is enough, in this case, that the additional count involved conduct unrelated to the two original charges and a less severe potential penalty.[2]

Finally, Corbitt maintains that the trial court erred in denying his motion for acquittal based on the Government's failure to establish an unbroken chain of custody of his shoulder bag. According to Corbitt, Government witnesses testifying to the events at the FAA police station failed to explain why his bag was removed from the top of a steel locker after having been placed on a Coke machine upon his arrival. The record indicates, however, that the defendant's bag never left the processing area during the short interval between his arrival and the search. Moreover, we are compelled to find that Corbitt's purposeful assistance in locating the cocaine renders nugatory the alleged deficiency in the Government's proof of chain of custody.

Accordingly, for the reasons stated, the conviction is affirmed.

AFFIRMED.

---

**2.** A violation of 18 U.S.C. § 1952(a)(3) (Count I) is punishable by up to five years imprisonment and a $10,000 fine; a violation of 21 U.S.C. § 841(a)(1) (Count II) by up to fifteen years imprisonment and a $25,000 fine; and a violation of 18 U.S.C. § 111 (Count III) by up to three years imprisonment and a $5,000 fine.

We note that in *United States v. Goodwin*, 637 F.2d 250 (4th Cir. 1981), *cert. granted,* ——

U.S. ——, 102 S.Ct. 632, 70 L.Ed.2d 613 (1981), where the circumstances were deemed to "give rise to a genuine risk of retaliation," *id.* at 253, the felony indictment complained of involved the same conduct previously alleged in a complaint charging various petty offenses and misdemeanors. *Id.* at 251–52.