**UNITED STATES of America**

v.

**Andre Montez WHITEHEAD, Defendant.**

**No. CRIM.A. 4:–06CR8.**

United States District Court, E.D. Virginia, Newport News Division.

March 27, 2006.

Jessica M. Norris, United States Attorney's Office, Norfolk, VA, for United States of America.

Riley Henderson Ross, III, Office of the Federal Public Defender, Norfolk, VA, for Andre Montez Whitehead.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

Before the Court is the Defendant Andre Montez Whitehead's Motion to Suppress evidence obtained from an unlawful search. Defendant alleges that the search was conducted without a warrant in violation of his Fourth Amendment rights, resulting in illegally obtained evidence. For the reasons set forth below, Defendant's Motion to Suppress is **DENIED.**[1]

### I. FACTUAL AND PROCEDURAL HISTORY

On October 1, 2005, Newport News Police Officers Jessica C. Collins ("Collins"), Richard Mojica ("Mojica"), and Joseph Land ("Land") were dispatched to 968 Marcus Drive in Newport News, Virginia. Upon arrival, the officers found Andre Montez Whitehead ("Defendant") and Mr. Saintfleury Blanc ("Blanc") engaged in a struggle. Blanc, along with two other witnesses, advised the officers that Defendant had a firearm in a vehicle parked nearby and had attempted to retrieve it during the struggle. After locating the vehicle, Officer Mojica asked Defendant to consent to a search of the vehicle. Defendant identified his wife, Mrs. Shenita Whitehead, as the owner of the vehicle. Officer Collins checked the vehicle registration to confirm that Mrs. Whitehead was the sole owner.

Officer Mojica advised Mrs. Whitehead that he wanted to search the vehicle but Mrs. Whitehead said no. Officer Mojica then advised Mrs. Whitehead that there was enough evidence to get a search warrant. After hearing this, Mrs. Whitehead, in the presence of Officer Land, gave the car keys to Officer Mojica and consented to the search of the vehicle. During the search, the officers found marijuana in the center console. While searching the vehicle's trunk, Officer Mojica found a black bag which contained a Fegyver es Gepgyar (FEG) 9mm semi-automatic pistol. The serial number had been obliterated with large scratches. The firearm had a fully loaded magazine containing seven live rounds of 9mm ammunition. A box containing twenty-one rounds of 9mm ammunition was also in the bag.

Defendant was detained and advised of his *Miranda* rights. Defendant stated to Officer Mojica that the weapon did not belong to his wife and later admitted that he had purchased the weapon a few days earlier from an unknown white male. Defendant further stated that the serial number on the gun had been scratched off before he bought it.

Defendant was charged in state court on various charges including removing or altering a serial number on a firearm and possession of a firearm by a convicted felon.[2] On November 29, 2005 and Janu-

---

**1.** This Memorandum Opinion and Order supercedes the ruling from the bench on March 15, 2006.

**2.** Defendant has twice been convicted of a felony in the Circuit Court for the City of Newport News, Virginia. On March 5, 1998, Defendant was convicted of Grand Larceny, a

felony, in the Circuit Court for the City of Newport News, Virginia. On May 10, 2001, Defendant was convicted of violating the Drug Control Act of Virginia in the Circuit Court for the City of Newport News, Virginia. The crime was punishable by imprisonment for a term exceeding one year and, therefore, is a felony.

ary 19, 2006, respectively, the Newport News Commonwealth Attorney's Office nolle prossed the state charges. On January 19, 2006, a federal grand jury indicted Defendant on the current charges. On February 7, 2006, Defendant filed the instant motion to suppress. The Government responded on February 14, 2006. The Court held a hearing on Defendant's Motion to Suppress on March 15, 2006. This matter is now ripe for determination.

## II. LEGAL STANDARD

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." U.S. CONST. amend. IV. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Generally, the Fourth Amendment requires that an arrest or search be based upon probable cause and executed pursuant to a valid warrant. *See Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A warrantless search or seizure will not violate the Fourth Amendment if a valid exception to the Fourth Amendment's warrant requirement exists. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Although, "the Amendment protects persons against unreasonable searches of 'their persons [and] houses ... the extent to which the Fourth Amendment protects people may depend upon where those people are.'" *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The United States Supreme Court has held that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation

of privacy in the invaded place." *Id.* (citing *Rakas v. Illinois*, 439 U.S. at 143, 99 S.Ct. 421; *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable." *Minnesota v. Olson*, 495 U.S. at 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). However, the defendant has the burden of showing that he has a reasonable expectation of privacy in the area searched. *See Rawlings v. Kentucky*, 448 U.S. at 104, 100 S.Ct. 2556.

## III. DISCUSSION

Defendant argues that the search of the parked vehicle was per se unreasonable and the evidence obtained should be excluded. Defendant further argues that there was no valid exception to the warrant requirement to justify the search of the vehicle, and that no one with the authority to give consent allowed the officer to search the vehicle. The Government asserts that because Mrs. Whitehead was the sole owner of the vehicle, Defendant had no reasonable expectation of privacy in the vehicle, and therefore he has no standing to challenge the search. Before determining whether voluntary consent was given, the Court must first consider whether Defendant has standing to challenge the search.

### A. Standing

A defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated. *See U.S. v. Salvucci*, 448 U.S. 83, 86–87, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. at 134, 99 S.Ct. 421. In cases involving Fourth Amendment violations, a defendant seeking standing to contest a search bears the burden of first establishing a possessory interest sufficient to entitle him to a reasonable expectation of privacy in

the place searched. *United States v. Rusher,* 966 F.2d 868, 873–74 (4th Cir. 1992) (citing *Rawlings v. Kentucky,* 448 U.S. at 106, 100 S.Ct. 2556). *See, e.g., United States v. Carter,* 300 F.3d 415, 421 (4th Cir.2002) (no reasonable expectation of privacy as a passenger in another's vehicle); *U.S. v. Torres,* 162 F.3d 6, 10 (1st Cir.1998) (defendant lacked standing to challenge search because he was only a casual visitor to the apartment searched); *Sharrar v. Felsing,* 128 F.3d 810, 823 (3d Cir.1997); *U.S. v. McRae,* 156 F.3d 708, 711 (6th Cir.1998) (defendant lacked standing to challenge warrantless search of vacant house that he did not own or rent and had only stayed in for a week).

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has found that the "[f]actors that courts consider in determining if a person has a reasonable expectation of privacy in property held by another include whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude other from the property." *Rusher,* 966 F.2d at 875. *See also, United States v. Sanchez,* 943 F.2d 110, 114 (1st Cir.1991) (factors considered in standing determination include "ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy").

■ In this case, Defendant was not the owner of the vehicle that was searched.

However, during the hearing, Mrs. Whitehead testified that Defendant provided money for fuel and maintenance of the vehicle, kept personal items in the vehicle, and used the vehicle as his primary mode of transportation. Mrs. Whitehead also stated that the vehicle was Defendant's vehicle and the only reason Defendant did not drive the vehicle was because he did not possess a driver's license. Defendant had authority to have others drive him places in the vehicle.

Defendant has provided evidence that shows that he had continuous access to the vehicle, unlimited use of the vehicle, and the ability to exclude others from the vehicle. *See Rusher,* 966 F.2d at 875; *United States v. Fernandez,* 430 F.Supp. 794, 798 (N.D.Cal.1976) (reasonable expectation of privacy when defendant made substantial contributions to the rent, was free to come and go, maintained residence and visited frequently); *Sanchez,* 943 F.2d at 114 (driver had no reasonable expectation of privacy in vehicle absent a history of regular use or a more intimate relationship with the vehicle's owner). Moreover, here Defendant provided regular maintenance on the vehicle and was married to the owner. Given the totality of the circumstances, Defendant has established a reasonable expectation of privacy in the vehicle. Accordingly, the Court finds that Defendant has standing to challenge the validity of the search.

**B. Consent**

■ The Court must now determine if Mrs. Whitehead gave voluntary consent to search her vehicle.[3] Defendant argues

---

**3.** Defendant has also argued that no one with proper authority gave consent but the Court finds that argument without merit. Mrs. Whitehead, as title owner of the vehicle, had the proper authority to give consent to a search of her property. *United States v. Carter,* 569 F.2d 801, 803 (4th Cir.1977)

("Searches undertaken with the consent of one with dominion over the property are a well recognized exception to the warrant requirements of the Fourth Amendment.") (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

that his wife's consent was not voluntary because she believed she did not have a choice. Defendant additionally argues that because Officer Mojica's statement that he could obtain a search warrant was possibly erroneous, Mrs. Whitehead was tricked into giving consent. The Government argues that Mrs. Whitehead's words and actions show that her consent was knowing and voluntary.

 Government actors, without a warrant or probable cause, may conduct a search based upon an individual's voluntary consent, and any evidence discovered during the search may be seized and admitted at trial. *U.S. v. Perrin,* 45 F.3d 869, 875 (4th Cir.1995) (rental car legally searched and cocaine, beeper, and $126 found in car validly seized and admitted at trial without warrant or probable cause because passenger gave verbal consent). To determine whether consent was voluntarily given, courts examine the totality of the circumstances surrounding the consent. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Factors in assessing voluntariness include: (1) knowledge of the constitutional right to refuse consent; (2) age, intelligence, education, and language ability; (3) the degree to which the individual cooperates with the police; (4) the individual's attitude about the likelihood of the discovery of contraband; and (5) the length of detention and the nature of questioning, including the use of physical punishment or other coercive police behavior. No single factor is dispositive. *See United States v. Gray,* 883 F.2d 320, 322 (4th Cir.1989). The prosecution bears the burden of proving that consent was voluntarily given, which is a question of fact. *See United States v. Matlock,* 415 U.S. 164, 177 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

 The Court finds that, when looking at the totality of the circumstances, Mrs. Whitehead gave voluntary consent to search the vehicle. *Mendenhall,* 446 U.S. at 557–58, 100 S.Ct. 1870; *Gray,* 883 F.2d at 322. First, Mrs. Whitehead testified that she initially informed the officers that she did not want them to search the vehicle. Only after Officer Mojica told her that he could get a warrant to search the vehicle did Mrs. Whitehead give consent and give the keys to the officer.[4] Such an initial refusal to search is evidence that Mrs. Whitehead knew of her constitutional right to refuse consent. Second, Mrs. Whitehead is 23 years old with two children and has had at least two jobs. She has completed the eleventh grade and works as a cashier. During her testimony, she was quite fluent. Third, Mrs. Whitehead, while not cooperative at first, eventually gave her car keys to the officers. Fourth, Mrs. Whitehead raised no objection that contraband would likely be found in the vehicle. Lastly, when she gave Officer Mojica the keys, Mrs. Whitehead was not being detained, subjected to any police interrogation, or any coercive police conduct.

That Mrs. Whitehead only gave consent after she was informed that a search warrant could be obtained does not negate the voluntariness of the consent. *United States v. Corbitt,* 675 F.2d 626, 628–29 (4th Cir.1982) (informing a person that a search warrant is being obtained does not negate the voluntariness of the consent). After giving consent, Mrs. Whitehead did not attempt to withdraw consent. Accordingly, the consent given for the search was voluntary and Defendant's Motion to Suppress is **DENIED**.

4. There was a conflict in the testimony between Mrs. Whitehead and the officers about who opened the trunk with the keys. The Court finds this conflict immaterial to its ultimate determination of consent.

## IV. CONCLUSION

Having reviewed the evidence presented at the hearing and the parties' pleadings, the Court concludes that Defendant had standing to challenge the search and Mrs. Whitehead gave informed and voluntary consent to the officers to search the vehicle. Accordingly, Defendant's Motion to Suppress is **DENIED**.

The Court **DIRECTS** the Clerk of the Court to send a copy of this Memorandum Opinion and Order to Defendant and the United States Attorney, Eastern District of Virginia, World Trade Center, Suite 8000, 101 West Main Street, Norfolk, Virginia 23510.

**IT IS SO ORDERED.**