UNITED STATES of America,

v.

**Marcos MONTILLA and Nitza Colon, Defendants.**

No. CR–89–142C.

United States District Court,
W.D. New York.

July 3, 1990.

Dennis C. Vacco, U.S. Atty. (Thomas S. Duskiewicz, Asst. U.S. Atty., of counsel), Buffalo, N.Y., for U.S.

Cohen & Lombardo, P.C. (Robert N. Convissar, of counsel), Buffalo, N.Y., for defendant Montilla.

J. Glenn Davis, Buffalo, N.Y., for defendant Colon.

CURTIN, District Judge.

Currently before the court is the government's motion for reconsideration of the court's decision granting suppression of evidence seized from the defendants in this case (Item 19). 733 F.Supp. 579. In its memorandum in support of motion for reconsideration (Item 22), the government suggests that there is no difference between the government's view of the facts, as set forth in their original memo, and the court's view, as set forth in its decision. That may be generally true, but it is not correct as to certain very essential facts which will be discussed. The facts of this case are set down in a detailed fashion in our earlier decision and will only be repeated here as necessary.

Before discussing the government's motion, several observations ought to be made. These observations are obvious, but basic and fundamental to the decision before the court. It is fundamental that simply because narcotics are found in a search, that cannot justify an illegal search. Further, the court is aware of the heavy burdens put on agents and the difficulty of enforcing the drug laws. But the approval of shortcuts and evasions of the law will only lead to disrespect for it. Other techniques are available for enforcement other than illegal searches. The judicial system has the responsibility to ensure that enforcement of the law does not fail to respect individuals' rights. An educated guess is not a substitute for cause or reasonable suspicion.

In this application for reconsideration, the government urges several points. First, it is claimed that the court misapplied the drug courier analysis, as explained by *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), and similar cases, in finding the agents had no reasonable suspicion to justify the initial investigatory stop. Secondly, the government urges that both defendants gave consent—Colon by uttering a single word, "yes," to a series of questions, and Montil-

la by unzipping both bags of luggage (Item 22, p. 5). Additionally, the government asserts a lack of standing argument and urges that Mr. Montilla's post-Miranda statements be admitted.

For the reasons given below, the court will stand by its initial determination to suppress the evidence seized. In the first round of briefing, the government argued that the initial questioning was justified under the drug profile cases. I have discussed the drug profile cases in my original decision and will adhere to that decision for the reasons given. In the second round, although mentioning the drug profile theory, the main position taken by the government is that the search was justified under the theory advanced in cases such as *United States v. Winston*, 892 F.2d 112 (D.C. Cir.1989) *petition for cert. filed*, (April 23, 1990) (No. 89-7306); *United States v. Maragh*, 894 F.2d 415 (D.C.Cir.1990) *petition for cert. filed*, (March 14, 1990) (No. 89-6935); and *United States v. Lloyd*, 868 F.2d 447, 451 (D.C.Cir.1989).

The more relaxed standard was not urged by the government on the first round and, in fairness, should not be considered now.[1] I believe that scant attention should be given to the government's new theory. In view of *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), I believe these cases were wrongly decided. *See also United States v. Gonzalez*, 728 F.Supp. 185 (S.D.N.Y.1989). Furthermore, considering all of the circumstances in this case, it would be reasonable for the defendants to assume that they were not free to leave. The agents had Montilla's identification, they had identified themselves as federal agents, they never told the defendants that they were free to leave, and they had the bags under control.

1. It appears to the court that the government is attempting to assert a lesser standard at bus stations while continuing to rely upon the higher standard required in drug profile cases during airport searches. In this case, the two individuals stopped were Hispanic. Most of the passengers arriving on this early New York express bus are either Black or Hispanic. As I have already noted in my first decision, of the 80 individuals stopped at this bus station during the prior month, only 3 arrests were made.

Other cases such as *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *United States v. Patrick*, 899 F.2d 169 (2d Cir.1990); *United States v. Barrios–Moriera*, 872 F.2d 12 (2d Cir.1989) *cert. denied*, —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989), now called to the attention of the court, are all distinguishable.

## I. CONSENT

### A. *Ms. Colon*

█ The agents maintain that Colon gave them consent to search the bags when she answered "yes" to the series of questions put to her. In my original decision, I found that she did not give consent and, after reconsideration, adhere to that finding. A more detailed explanation follows.

The transcript at the hearing in pertinent part reads:

[Agent Johnson answering:]

A. It was at that point that I asked the 2 people if they would mind if we took a quick look through their duffle bags.

Q. All right. What words did you use when you asked them if they would mind if you took a look through their duffle bags?

A. I explained that we were members of the Drug Enforcement Task Force and we were looking for narcotics, and I said, would you mind if we took a quick look through your bags.

Q. All right. And did you receive responses when you made that inquiry?

A. Well, I told her at the same time, I said, you're not under arrest, you

The practice of stopping many passengers alighting from the express bus with only a flimsy reason approaches the circumstance described by the Supreme Court in the case recently decided, *Michigan Department of State Police v. Sitz*, —— U.S.——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). If there is to be a checkpoint search of bus passengers on particular buses, then the safeguards set forth in that case should be applied.

don't have to if you don't want to. At that point the female said, yes....

T. at 23.

[Page 82, Agent Terranova answering:]

Q. What exactly did you say?

A. That we were there looking for narcotics and contraband.

Q. All right. And after you advised them of your purpose, what was done?

A. We asked if we could look in the subjects' travel bags that they had been carrying when they got off the bus.

\* \* \* \* \* \*

Q. All right. And what was done after the request was made to examine the bags?

A. We asked if we could look in their bags. Ms. Colon said, yes.

The government relies upon the single statement made by Ms. Colon that she said yes to the series of questions. It should be kept in mind that her "yes" followed a series of statements of who the agents were, that she was not under arrest, that they were looking for narcotics, and finally, "[w]e asked if we could look in [their] bags." Clearly, this encounter between agents and defendants took only a minute or so, and only the briefest explanation was made by the agents. In interpreting what the word "yes" means in this context, it is fair to consider that individuals use the word "yes" in many different ways. Quite often, the word "yes" is used simply as an acknowledgement of what the person had to say and that the listener is waiting for more details. Furthermore, although Ms. Colon could speak and understand English, she was primarily a Spanish-speaking individual, and we have no evidence as to how the word "yes" is used in that language.[2]

Keep in mind that the government has the burden of proving that the consent to search the bag was given voluntarily and with knowledge. I find that under these circumstances, defendant Colon's "yes" did not constitute informed consent. The government has simply failed in its burden. Ms. Colon did not freely and knowledgeably give her consent to the agents to search her bag. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973).

The government now advances the argument that "the conduct by Mr. Montilla in unzipping both bags demonstrate[d] his acknowledgement of the voluntary consent as provided by Ms. Colon." (Item 22, p. 5.) I find no merit to that argument. There appears to be no reason to find that Mr. Montilla had the consent of Ms. Colon to act for her. Although, apparently traveling together, the agents had no knowledge of the relationship between the two individuals. Furthermore, I have determined and adhere to the determination that Mr. Montilla did not understand English well and, under the circumstances, could not give knowledgeable consent to the search. And, as I have already indicated in the original order, it is not clear whether Montilla opened the bags or whether they were opened by one of the agents. Neither Ms. Colon nor Mr. Montilla gave informed consent to search the bags.

**B.** *Mr. Montilla*

For the reasons expressed in my original decision, I find that Mr. Montilla did not consent to the search of the bag. I adhere to that decision.

## II. STANDING

In a brief statement in its memorandum in support of the motion for reconsideration (Item 22, p. 9), the government requests the court to reconsider its ruling based on the question of each defendant's individual standing. No argument is made in support of this statement. This argument was not raised during the time of the original hearing, and the court sees no need to consider it at the present time. The contraband was found in Ms. Colon's bag. I have determined that she did not give informed consent for the search and that Montilla could not give the consent to

2. *See also* Item 19, p. 13.

search her bag by his action in unzipping it. As to his bag, nothing was found, and therefore, there is nothing to suppress.

## III. STATEMENTS MADE BY DEFENDANTS

In my original decision, I had held that any statements made by either defendant after the bags were opened but before *Miranda* warnings were given had to be suppressed. I adhere to that ruling.

Because the question as to whether *Miranda* warnings were given was not addressed in the original briefing, I requested the parties to brief that question. From a review of the record I find that John Crocitto, Border Patrol Agent, gave appropriate *Miranda* warnings to both defendants in English and in Spanish. Any statements made to him were made voluntarily. Therefore, any statements made to him following the giving of the *Miranda* warnings may be admitted into evidence. *Oregon v. Elstad*, 470 U.S. 298, 309, 318, 105 S.Ct. 1285, 1293, 1297–98, 84 L.Ed.2d 222 (1984).

## IV. CONCLUSION

To summarize, the motion to suppress the contraband found in the bag is granted. Statements made between the time the bags were unzipped until the time *Miranda* warnings were given are suppressed. Statements made after *Miranda* warnings were given may be received into evidence.

So ordered.