**The UNITED STATES of America**

v.

**Asim SPRINGER.**

**No. CR–90–23E.**

United States District Court,
W.D. New York.

Oct. 30, 1990.

Asst. U.S. Atty., Thomas S. Duszkiewicz, Buffalo, N.Y., for Government.

Robert N. Convissar, Buffalo, N.Y., for defendant.

MEMORANDUM AND ORDER

ELFVIN, District Judge.

The abovenamed individual, by his assigned attorney, moved to suppress as trial evidence a quantity of cocaine found in his personal luggage and statements made by him. Involved is the scenario which has been often dealt with by the undersigned and other judges of this Court. See, *U.S. v. St. Kitts,* 742 F.Supp. 1218 (W.D.N.Y. 1990), *U.S. v. Montilla,* 733 F.Supp. 579 (W.D.N.Y.), *reconsideration denied,* 739 F.Supp. 143 (W.D.N.Y.1990), *United States v. Murguia–Rodriguez,* unpublished opinion, CR–89–219A (W.D.N.Y. July 11, 1990) and *United States v. Ramos,* unpublished opinion, CR–89–166A (W.D.N.Y. April 23, 1990).

A drug and drug-money interdiction team, comprised of Border Patrol officers and Drug Enforcement Agency agents in plain clothes, surveils an interstate bus terminal in downtown Buffalo, the Buffalo International Airport and the local railroad station or stations. The listed cases and the instant one stem from such operations at the bus terminal and, particularly, the arrival there early each morning of an express bus from New York City. Attention is directed at this bus because, it is said, it leaves New York City in the late evening when the police patrol and other enforcement activity is at an ebb and the operations are carried out with skeleton crews.

On February 7, 1990 Special Agent Johnson of the Drug Enforcement Agency and Border Patrolman Allman were at the bus terminal when the bus arrived. Both watched as the passengers disembarked. Johnson noted that Springer was looking at others and glancing over his shoulder and appeared to be apprehensive. He carried one bag from the bus and secured another from the bus's luggage compartment. Springer remained outside the terminal for a couple of minutes before he entered the terminal and watched as Allman led an arrested man to two uniformed policemen. Springer paced back and forth and then left the terminal building, going away from the curb and to a taxi stand. Johnson followed him, identified himself as a police officer and asked Springer if he would mind stepping back to and away from the curb. Johnson admitted, at the evidentiary hearing which was convened pursuant to the motion, that Springer had not totally met the aspects of a "drug courier profile" in which Johnson had received training but did arouse his suspicions that he might have been a drug courier. Johnson had no "profile material" other than that Springer had come to Buffalo from a source city and his actions as aforesaid. Springer's answers to certain questions concerning a cousin were ambiguous and aroused Johnson's suspicion a little more. Johnson, however, flatly testified that Springer did not meet the drug courier profile and never did actually fit the profile. Johnson explained that "so many things" enter into the drug courier profile and lamented that, at the bus station as compared with the airport, one doesn't have anything near what you would have for a drug courier profile. At the airport one would have access to airline records reflecting whether an individual was travelling under an assumed name, had paid for his ticket by cash or by credit card and had left a viable telephone number. Johnson testified that the drug courier profile had little usefulness at the bus station where one has to base everything on the interview. He admitted that one does not get to the point of an interview without having stopped the individual unless the individual is told fairly straight out at the outset that he neither need interrupt whatever he was in the course of doing nor had to respond in any fashion to an agent's questions.

An illegal stop had occurred at the point when Johnson asked Springer to step away from the taxi stand and the curb. There was at that point no justification to stop Springer and the drugs subsequently found in his baggage and the statements later made are not admissible on trial.

Such determination hews to the decisional law outlined in the aforecited cases and such is not repeated here.

However and aside from such law, the undersigned strongly feels that drugs and drug trafficking is such a present-day scourge and so difficult to control that drug enforcement agents should be allowed greater leeway in stopping individuals and in searching them and their belongings. If Congress were to enact legislation allowing such, the undersigned would not foresee any Constitutional impediment. See, e.g., *Michigan Dept. of State Police v. Sitz*, —— U.S. ——, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).