UNITED STATES of America, Plaintiff,

v.

Lucelly ABADIA, Defendant.

No. 90–101 Cr (1).

United States District Court, E.D. Missouri, E.D.

Nov. 5, 1990.

Howard Marcus, for plaintiff.

Michael Dwyer, Federal Public Defender, St. Louis, Mo., for defendant.

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE

DAVID D. NOCE, United States Magistrate.

The pretrial motions of the parties were referred to the undersigned United States Magistrate under 28 U.S.C. § 636(b). An evidentiary hearing was held on October 19, 29, and 30, 1990. An English and Spanish speaking interpreter assisted the defendant each day of the hearing.

### 1. Pretrial discovery.

Defendant Lucelly Abadia has moved for disclosure of the identity of the confidential informant, for disclosure of the consideration paid to the informant, for disclosure of impeaching information, for production of favorable evidence, and for disclosure of evidence.

In response, the United States has stated that the defendant did not make any written or recorded statements,[1] that it has provided the defendant with the investigative reports, that it will provide the Jencks Act materials prior to trial, that no electronic surveillance was used, that it does not possess any evidence favorable to the defendant, and that the informant was a mere "tipster" whose identity ought not be disclosed.

■ From the response of the United States and the statements of counsel at the hearing, it appears that defendant has received or will receive pretrial disclosure of all evidence to which she is entitled. The United States has indicated it will comply with the Jencks Act (18 U.S.C. § 3500), and its constitutional obligations to disclose evidence favorable to the defense under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Court may not require the government to provide Jencks Act materials at a time other than is prescribed by the Act. *United States v. White*, 750 F.2d 726, 729 (8th Cir.1984).

■ The government is not required to provide the defendant a list of witnesses. *Id., at* 728. The defendant has not shown a sufficient, particularized need for disclosure of the grand jury record. *United States v. Benson*, 760 F.2d 862, 864 (8th Cir.1985), *cert. denied*, 474 U.S. 858, 106 S.Ct. 166, 88 L.Ed.2d 137 (1985); Fed.R. Crim.Proc. 16(a)(3). Defendant is not entitled to the identity of the informant, because the informant was only a tipster and not a witness to the facts on which the government will offer proof at trial. *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir.1987).

The government has moved for reciprocal discovery from the defendant under Federal Rules of Criminal Procedure 16(b) and 26.2. The defendant has indicated that she will comply with these rules.

Therefore, the discovery motions of the government and of the defendant will be denied as moot.

### 2. Suppression motions.

Defendant Abadia has moved to suppress seized physical evidence, her statements, and the fruits of any illegal electronic surveillance. Because the government has indicated that no electronic surveillance was used in this investigation, the subject matter of the suppression hearing were the defendant's oral statements and the physical evidence seized from her.

From the evidence adduced at the hearing and the record of the preliminary exam-

---

1. As set forth below, defendant made oral state-  ments to the investigators.

ination held on May 25, 1990,[2] the undersigned makes the following findings and conclusions:

## FACTS

1. On May 18, 1990, United States Immigration and Naturalization Service Special Agent Enrique Aguilar was told by a confidential informant that on May 20 a woman named Lucy Abadia will be flying into St. Louis International Airport from Miami, Florida, on TWA flight 683 with one or two kilograms of cocaine in her luggage. The informant described Abadia as a Columbian female in her late 20's, 5 feet 4 inches tall, with wavy, dark hair. On two prior occasions the informant had provided Agent Aguilar with reliable information.

2. After Agent Aguilar received the informant's information, he telephoned the TWA information office and learned that a Lucy Abadia had a reservation for flight 683, which would be arriving at gate 46, and that she would be seated in row 17. Thereafter, on Saturday evening, May 19, Agent Aguilar notified the DEA airport personnel and the airport police of the informant's information.

3. Agent Aguilar also informed the Miami airport police about the informant's information, but on May 20 flight 683 departed Miami without the police intercepting the suspected drug courier. Agent Aguilar, St. Louis County Police Sgt. Larry Wheeler (a member of the DEA Task Force stationed at the airport), and other law enforcement personnel were at gate 46 to meet flight 683 when it arrived at approximately 2:50 p.m. on May 20. Sgt. Wheeler had been told by TWA that Abadia would be occupying seat 17A.

4. Sgt. Wheeler, female Police Officer Kimberly Presley, and several other officers boarded the plane before the passengers deplaned. The passengers were then in the aisle preparing to deplane. Wheeler asked the plane's captain for permission to go to seat 17A. To aid the police, the flight attendant asked the passengers to return to their seats and they did so. Sgt. Wheeler then walked down the aisle to row 17. In row 17 he showed defendant Abadia his credentials and asked her whether she was Lucy Abadia. Defendant shook her head in the affirmative and indicated that she did not understand English. Sgt. Wheeler motioned that defendant should accompany him off the plane. She did so, walking off the plane ahead of Wheeler; she was not handcuffed. In the airport terminal, in the area of gate 46, Officer Presley asked defendant for her ticket. Defendant gave Presley her ticket. Presley saw that the ticket was in the name of Lucelly Abadia and returned the ticket to her. Thereafter, at the direction of either Wheeler or Presley, defendant walked with them to the airport DEA office which was approximately 2400 feet from gate 46. They were followed at a distance by Task Force Detective Dan Slay. Defendant was not handcuffed at this time.

5. When Presley, Wheeler, and defendant entered the airport DEA office, they were joined by Police Officer Mike Williams who is fluent in Spanish. Sgt. Wheeler had earlier requested that Williams join him at the airport, so that Williams could speak with the Spanish speaking subject. Wheeler had defendant sit down. He then gave Williams the informant's information about cocaine being in defendant's luggage and Wheeler asked Williams to speak to defendant in Spanish. Williams then identified himself to defendant and showed her his credentials. Williams then read her her constitutional rights to remain silent and to counsel in Spanish from a Spanish–English language card. After each statement of each right, defendant said in Spanish that she understood the right.

6. Officer Williams then conversed with defendant in Spanish. He told her that they were investigating her for carrying two kilograms of cocaine in her luggage. He asked her whether she had checked luggage. She said that she did. He asked

---

**2.** During the hearing held on the motions to suppress, and in the Memorandum filed by defendant on the suppression issues, defendant referred to the transcript of the preliminary examination which was held before the undersigned Magistrate.

her to describe the luggage and whether she herself had packed its contents. She said that she had packed it and that it was a suitcase, dark blue or black in color. At his request, she handed him her claim check. He asked her whether they could get the suitcase from the baggage carousel. She said that they could do so. At that time defendant was calm; she was not crying. During this conversation, Officer Williams told Sgt. Wheeler in English what defendant and he were saying.

7. At that time, Sgt. Wheeler sent a police officer to the carousel to get defendant's luggage. When the officer brought defendant's suitcase into the DEA office, Williams asked defendant whether she would give the police her permission to search the luggage. She answered in the affirmative and motioned toward the suitcase with her hand. Sgt. Wheeler put the suitcase on the floor and tried to open it, but it was locked. Williams then asked defendant whether she could open the suitcase. Defendant answered in the affirmative, got her key from her purse which had remained in her possession, and unlocked the suitcase. Wheeler then tried to open the suitcase, but could not do so because it was secured by a combination lock. Williams then asked defendant if she had the combination so that the suitcase could be opened. Defendant then moved the lock numbers to the correct combination and she herself opened the suitcase.

8. Sgt. Wheeler then searched the suitcase. In the bottom portion he found a blanket, clothes, and an opened, grey plastic shopping bag. When asked what the bag's contents were, defendant answered that she did not know. At this time defendant became very nervous and distraught. Inside the bag Wheeler found a box-like container wrapped in brown tape. Under the brown wrapping Wheeler found a shoe box. Inside the shoe box, Wheeler smelled perfume and found two containers immersed in a quantity of clear hand soap. The two containers were wrapped in brown tape. From his drug investigation experience, Sgt. Wheeler then believed the containers contained cocaine. He opened the wrapping and found clear plastic bags of white powder, which Sgt. Wheeler believed was cocaine. He then field tested the powder, which tested positive for cocaine.

9. At that time Officer Williams told defendant in Spanish that she was under arrest. He again read her in Spanish her constitutional rights to remain silent and to counsel. She understood these rights. At that time Officer Presley searched defendant's person, but seized nothing. From defendant's purse were seized a Florida driver's license, an alien identification card, and other papers. Sgt. Wheeler then booked defendant. During this process, Officer Williams asked her for identification information and for the identity of the cocaine source. Defendant made statements in response to these questions. When the questioning ended, defendant was taken to the St. Louis County Jail. At no time on May 20, 1990, were any threats or promises made to get defendant to answer the questions or to consent to the search of the suitcase or to open the locks on the suitcase or to open the suitcase herself. At no time did she ask for an attorney or that the questioning end.

## DISCUSSION

Defendant Abadia asks the Court to suppress her oral statements, the cocaine contraband, and the other physical evidence seized from her on May 20, 1990.

■ Defendant argues, first, that she was effectively "seized" on the airplane when Sgt. Wheeler approached her and asked her whether she was Lucy Abadia. Several facts support this argument. First and foremost, at this time defendant (and all of the plane's passengers) were not free to leave the plane and go about their business, because, to aid the investigation, the airline personnel directed all the passengers (including defendant) to return to their seats. Second, Sgt. Wheeler entered the plane and walked down the aisle with at least one other officer. Third, he displayed his law enforcement credentials. Fourth, she then knew that her luggage contained cocaine. Fifth and also of cardinal importance, Sgt. Wheeler did not ask

her what her name was; he suggested the correct name to her and asked for her agreement or disagreement. Under those circumstances, a reasonable person in defendant's position might have believed she was suspected of a crime and was not free to leave. *United States v. McKines,* 917 F.2d 1077, 1080 (8th Cir.1990); *United States v. Jefferson,* 906 F.2d 346, 348–349 (8th Cir.1990); *United States v. Sadosky,* 732 F.2d 1388, 1392 (8th Cir.), *cert. denied,* 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984).

■ Whether or not defendant was "seized" when Sgt. Wheeler asked her whether she was Lucy Abadia, his actions were supported by a reasonable, articulable factual basis for suspecting that a person in row 17 with defendant's characteristics was transporting a substantial amount of cocaine in her luggage. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968); *United States v. Thompson,* 906 F.2d 1292, 1296 (8th Cir.1990).

In determining the Fourth Amendment constitutionality of the officer's actions, the Court must consider the information known by each of the officers involved in the investigation. *United States v. Hensley,* 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed.2d 604 (1985). As testified to, when he went to row 17 of flight 683 on May 20, Sgt. Wheeler observed in that row a woman who spoke Spanish and who had the physical characteristics described by the informant, who had been previously shown to be reliable and who had said this woman would be transporting cocaine. This was a sufficient basis for the investigative actions[3] taken by Sgt. Wheeler prior to defendant identifying herself. *Adams v. Williams,* 407 U.S. 143, 148, 92 S.Ct. 1921,

1924, 32 L.Ed.2d 612 (1972); *cf., Alabama v. White,* —— U.S. ——, ——, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

When defendant admitted her name to Sgt. Wheeler and thereby corroborated the informant's information, Wheeler then had a reasonable, articulable factual basis for believing that the informant's other information was correct, *i.e.* that this specific person was then transporting cocaine in her luggage. *Cf., United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1589, 104 L.Ed.2d 1 (1989). Whether or not there was then probable cause to arrest, the information then known authorized Sgt. Wheeler under the Fourth Amendment to take defendant off the airplane and to the DEA airport office for further investigation.[4] *Cf., United States v. Brignoni-Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

It was reasonable for Sgt. Wheeler, for the purpose of limited investigative detention, to take defendant from the airplane, which had just landed, which was crowded with passengers anxious to deplane, which would possibly soon be made ready for further flight, and which defendant was very likely intending to leave anyway, absent the investigation. It would have been unreasonable, and probably improper (both for the security of the law enforcement personnel and for the security of the defendant) to conduct further investigation on the crowded airplane amid inconvenienced passengers. The DEA airport office was an appropriate place in which to continue the investigation, which required enquiry about Abadia's luggage.

In the DEA office Sgt. Wheeler and Officer Williams lawfully acquired incrimina-

---

**3.** Sgt. Wheeler was warranted in entering the plane to verify the informant's information, instead of waiting for the passengers to deplane. Defendant Abadia's location in row 17, if not in seat 17A, was critical to her identification.

**4.** This case involves a very important fact not present in the cases cited by defendant, *e.g., Reid v. Georgia,* 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); and *United States v.*

*Moreno,* 742 F.2d 532 (9th Cir.1984). *Reid, Royer, Place,* and *Moreno,* did not include the fact that, prior to the commencement of defendant's investigative detention, a reliable informant had affirmatively identified the subject as then being engaged in a specific crime. This fact, in conjunction with the corroborating coincidence of defendant Abadia's characteristics and location, took the case out of the realm of mere investigative hunch and established the constitutionality of the officers' actions.

ting statements from defendant, obtained the packages of cocaine from her luggage, and seized the documentary evidence from her purse. After Officer Williams, who spoke Spanish, identified himself to defendant, he orally advised her of her constitutional rights, as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which rights she understood. Immediately thereafter Officer Williams told her that she was being investigated for carrying two kilograms of cocaine. Whatever her motives, defendant thereafter made voluntary statements and assisted the officers in acquiring and opening her suitcase without any coercive activity by them. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir.), *cert. denied*, 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 381 (1987); 18 U.S.C. § 3501(b)(2), (3), (4).

Defendant voluntarily opened her suitcase and consented to the search by Sgt. Wheeler. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 225, 226, 93 S.Ct. 2041, 2043, 2046, 2047, 36 L.Ed.2d 854 (1973). Her consent was voluntary, because she was an adult, who was not intoxicated, who had been advised of her *Miranda* rights, whose detention had been by then of short duration, who had not been threatened, whose cooperation had not been induced by promises, and who had not objected to the police activity. *United States v. Chaidez*, 906 F.2d 377, 380–81 (8th Cir.1990). The discovery of the cocaine came within a reasonably short period of time after the commencement of the investigative detention of defendant. *Cf., Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). The seizure of the cocaine was the final fact which established probable cause for her arrest. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

The seizure of the documentary evidence from defendant's purse was incident to the lawful arrest. *United States v. Herrera*, 810 F.2d 989, 990 (10th Cir.1987).

For these reasons, the motions to suppress evidence should be denied.

Whereupon,

IT IS HEREBY ORDERED that the motions of defendant for disclosure of the identity of the confidential informant, for disclosure of the consideration paid to the informant, for disclosure of impeaching information, for production of favorable evidence, and for disclosure of evidence are denied as moot.

IT IS HEREBY ORDERED that the motion of the United States for reciprocal discovery is denied as moot.

IT IS HEREBY RECOMMENDED that the motions of the defendant to suppress physical evidence and statements, and to suppress the fruits of electronic surveillance be denied.

The parties have eleven days in which to file written objections to these recommendations and determinations.