## 57466. THE STATE v. REID.

BANKE, Judge.

The defendant was charged with violation of the Georgia Controlled Substances Act. A motion to suppress was filed by counsel. After a hearing, the trial judge granted defendant's motion to suppress. The state appeals.

An agent for the United States Department of Justice, Drug Enforcement Administration, was on surveillance duty at the Atlanta Airport in the early morning hours of the day in question. He observed the defendant and another man arrive on a flight from Fort Lauderdale, Florida. Both carried identical large men's purses. Each maintained a distance from the other as they exited the arrival area with the defendant in the lead, looking back occasionally as if to determine the location of the other. Both continued separated, past the baggage claim area toward the front door of the terminal. As they reached the main lobby of the airport, the defendant's companion caught up with him and spoke a few words. The two picked up their pace and hurried toward the front door.

As they exited the terminal through the front door, the agent caught up with them, identified himself, and asked to see their airline tickets and identification. Both produced the tickets, which indicated they had both been purchased with the defendant's credit card and that their trip from Atlanta to Fort Lauderdale and return encompassed just slightly more than one full day. During this time both appeared nervous. The agent asked the two men if they would cooperate with him by returning inside

the terminal and consenting to a quick pat-down search and a look into their purses. The defendant nodded affirmatively, and his companion replied, "Yeah, okay."

Just as they re-entered the terminal, the defendant began running, still in possession of his purse. After receiving the aid of an Atlanta police officer to secure the companion, the agent pursued and captured the defendant, who no longer was in possession of his purse. After retracing the route of the defendant, an apparently identical purse was found about 100 feet from the place where the defendant was caught.

The trial judge in granting the motion based his ruling on the lack of an "articulable suspicion" on the part of the agent for his decision to stop the defendant. *Held:*

1. The decision to stop the defendant and his partner was obviously based on the fact that they, in a number of respects, fit a "profile" of drug couriers compiled by the United States Drug Enforcement Administration. Fort Lauderdale, the agent testified, is the leading distribution point for cocaine in the United States. The early morning flights offer lowest chances for detection because of decreased law enforcement activity. Couriers traveling together often wish to disguise that fact, and the lack of baggage is also a factor. These factors constituted an "articulable suspicion" sufficient to justify a brief stop for questioning, although certainly not sufficient to justify arrest or search. Terry v. Ohio, 392 U. S. 1 (1968). "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow . . . a criminal to escape." Adams v. Williams, 407 U. S. 143, 145 (1972). Accord, *Brisbane v. State,* 233 Ga. 339 (211 SE2d 294) (1974); *Allen v. State,* 140 Ga. App. 828 (232 SE2d 250) (1976); *Anderson v. State,* 123 Ga. App. 57 (179 SE2d 286) (1970).

2. In its ruling on the motion, the trial court found "that at the time the officer suggested these men go back into the airport with him that by that time they were quote under arrest end quote." The only evidence heard by the trial court was that given by the agent of the Drug Enforcement Administration who testified that the defendant and his companion consented to return to the

terminal. The agent was not dressed in a uniform, although he did produce his credentials. He was wearing blue jeans and a light weight jacket. He had a gun in the rear area of his waistband, covered by his jacket, and not visible to the defendant and his companion. He was alone. There is no suggestion that the defendant was reluctant to return to the terminal. There is also no evidence of coercion, youth, lack of education, low intelligence, harsh questioning, or use of physical force. *State v. Rivers,* 142 Ga. App. 96 (235 SE2d 393) (1977). Whether consent was given is to be determined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U. S. 218 (1973). At the conclusion of the state's evidence on the motion, both sides when questioned by the trial judge, indicated they had nothing further to present. The evidence of consent is unrebutted. Therefore, we hold that the trial court erred in finding that the defendant was under arrest.

3. Given a permissible "Terry stop" and a freely given consent to return to the terminal for "the pat-down and look in the purse," there is ample authority for the proposition that flight in connection with the other circumstances would provide probable cause for the subsequent apprehension and search of the purse discarded in defendant's flight. *Cook v. State,* 136 Ga. App. 908 (222 SE2d 656) (1975); *Green v. State,* 127 Ga. App. 713 (194 SE2d 678) (1977).

*Judgment reversed. Shulman and Underwood, JJ., concur.*

Submitted March 6, 1979 — Decided April 4, 1979 — Rehearing denied April 24, 1979 —

*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Richard E. Hicks, Assistant District Attorneys,* for appellant.

*Cohen, Mackin & Pollock, Dennis S. Mackin,* for appellee.