REID *v.* GEORGIA

No. 79–448.  Decided June 30, 1980

PER CURIAM.

The petitioner was indicted in the Superior Court of Fulton County, Ga., for possessing cocaine.  At a hearing before trial, he moved to suppress the introduction of the cocaine as evidence against him on the ground that it had been seized from him by an agent of the federal Drug Enforcement Administration (DEA) in violation of his rights under the Fourth and Fourteenth Amendments.

The relevant facts were determined at the pretrial hearing and may be recounted briefly. The petitioner arrived at the Atlanta Airport on a commercial airline flight from Fort Lauderdale, Fla., in the early morning hours of August 14, 1978. The passengers left the plane in a single file and proceeded through the concourse. The petitioner was observed by an agent of the DEA, who was in the airport for the purpose of uncovering illicit commerce in narcotics. Separated from the petitioner by several persons was another man, who carried a shoulder bag like the one the petitioner carried. As they proceeded through the concourse past the baggage claim area, the petitioner occasionally looked backward in the direction of the second man. When they reached the main lobby of the terminal, the second man caught up with the petitioner and spoke briefly with him. They then left the terminal building together.

The DEA agent approached them outside of the building, identified himself as a federal narcotics agent, and asked them to show him their airline ticket stubs and identification, which they did. The airline tickets had been purchased with the petitioner's credit card and indicated that the men had stayed in Fort Lauderdale only one day. According to the agent's testimony, the men appeared nervous during the encounter. The agent then asked them if they would agree to return to the terminal and to consent to a search of their persons and their shoulder bags. The agent testified that the petitioner nodded his head affirmatively, and that the other responded, "Yeah, okay." As the three of them entered the terminal, however, the petitioner began to run and before he was apprehended, abandoned his shoulder bag. The bag, when recovered, was found to contain cocaine.

The Superior Court granted the petitioner's motion to suppress the cocaine, concluding that it had been obtained as a result of a seizure of him by the DEA agent without an articulable suspicion that he was unlawfully carrying narcotics. The Georgia Court of Appeals reversed. 149 Ga. App. 685,

255 S. E. 2d 71. It held that the stop of the petitioner was permissible, citing *Terry* v. *Ohio,* 392 U. S. 1 (1968), since the petitioner, "in a number of respects, fit a 'profile' of drug couriers compiled by the [DEA]." 149 Ga. App., at 686, 255 S. E. 2d, at 72. The appellate court also concluded that the petitioner had consented to return to the terminal for a search of his person, and that after he had attempted to flee and had discarded his shoulder bag, there existed probable cause for the search of the bag.

The Fourth and Fourteenth Amendments' prohibition of searches and seizures that are not supported by some objective justification governs all seizures of the person, "including seizures that involve only a brief detention short of traditional arrest. *Davis* v. *Mississippi,* 394 U. S. 721 (1969); *Terry* v. *Ohio,* 392 U. S. 1, 16–19 (1968)." *United States* v. *Brignoni-Ponce,* 422 U. S. 873, 878 (1975).* While the Court has recognized that in some circumstances a person may be detained briefly, without probable cause to arrest him, any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity. See *Brown* v. *Texas,* 443 U. S. 47, 51 (1979); *Delaware* v. *Prouse,* 440 U. S. 648, 661 (1979); *United States* v. *Brignoni-Ponce, supra; Adams* v. *Williams,* 407 U. S. 143, 146–149 (1972); *Terry* v. *Ohio, supra.*

The appellate court's conclusion in this case that the DEA agent reasonably suspected the petitioner of wrongdoing rested on the fact that the petitioner appeared to the agent to fit the so-called "drug courier profile," a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics. Specifically, the court thought

---

*"Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry* v. *Ohio,* 392 U. S. 1, 19, n. 16 (1968). See also *id.,* at 34 (WHITE, J., concurring); *id.,* at 31, 32–33 (Harlan, J., concurring).

it relevant that (1) the petitioner had arrived from Fort Lauderdale, which the agent testified is a principal place of origin of cocaine sold elsewhere in the country, (2) the petitioner arrived in the early morning, when law enforcement activity is diminished, (3) he and his companion appeared to the agent to be trying to conceal the fact that they were traveling together, and (4) they apparently had no luggage other than their shoulder bags.

We conclude that the agent could not, as a matter of law, have reasonably suspected the petitioner of criminal activity on the basis of these observed circumstances. Of the evidence relied on, only the fact that the petitioner preceded another person and occasionally looked backward at him as they proceeded through the concourse relates to their particular conduct. The other circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure. Nor can we agree, on this record, that the manner in which the petitioner and his companion walked through the airport reasonably could have led the agent to suspect them of wrongdoing. Although there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot, see *Terry* v. *Ohio, supra,* at 27–28, this is not such a case. The agent's belief that the petitioner and his companion were attempting to conceal the fact that they were traveling together, a belief that was more an "inchoate and unparticularized suspicion or 'hunch,'" 392 U. S., at 27, than a fair inference in the light of his experience, is simply too slender a reed to support the seizure in this case.

For these reasons, the judgment of the appellate court cannot be sustained insofar as it rests on the determination that the DEA agent lawfully seized the petitioner when he approached him outside the airline terminal. Accordingly, the petition for certiorari is granted, the judgment of the Georgia

Court of Appeals is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE REHNQUIST dissents for the reasons stated by MR. JUSTICE STEWART in his opinion in *United States v. Mendenhall*, 446 U. S. 544 (1980). He believes that the police conduct involved did not implicate the Fourteenth or Fourth Amendment rights of the petitioners.

MR. JUSTICE POWELL, with whom THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN join, concurring.[1]

This case is similar in many respects to *United States v. Mendenhall*, 446 U. S. 544 (1980), in which a defendant observed walking through an airport was stopped by DEA agents and asked for identification. The threshold question in *Mendenhall*, as here, was whether the agent's initial stop of the suspect constituted a seizure within the meaning of the Fourth Amendment. MR. JUSTICE STEWART, joined by MR. JUSTICE REHNQUIST, was of the opinion that the mere stopping of a person for identification purposes is not a seizure:

> "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.,* at 554.[2]

---

[1] I agree, on the basis of the fragmentary facts apparently relied upon by the DEA agents in this case, that there was no justification for a "seizure."

[2] MR. JUSTICE STEWART also noted that " '[t]here is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets.'" 446 U. S., at 553, quoting *Terry v. Ohio*, 392 U. S. 1, 34 (1968) (WHITE, J., concurring). See also *ante,* at 440, n.

Thus, on the basis of facts remarkably similar to those in the present case, MR. JUSTICE STEWART and MR. JUSTICE REHNQUIST decided that no seizure had occurred.

My concurring opinion in *Mendenhall*, in which THE CHIEF JUSTICE and MR. JUSTICE BLACKMUN joined, did not consider the seizure issue because it had not been raised in the courts below. Even if the stop constituted a seizure, it was my view that the DEA agents had articulable and reasonable grounds for believing that the individual was engaged in criminal activity. Therefore, they did not violate the Fourth Amendment by stopping that person for routine questioning. I expressly stated, however, that my decision not to reach the seizure issue did not necessarily indicate disagreement with the views of MR. JUSTICE STEWART and MR. JUSTICE REHNQUIST. *Id.*, at 560, n. 1.[3]

The state courts, which decided this case before our decision in *Mendenhall*, did not consider whether the petitioner had been seized. Rather, those courts apparently assumed that the stop for routine identification questioning constituted a seizure, and addressed only the question whether the agent's actions were justified by articulable and reasonable grounds of suspicion. Because we similarly do not consider the initial seizure question in our decision today, that issue remains open for consideration by the state courts in light of the opinions in *Mendenhall*.

[3] MR. JUSTICE WHITE, joined by MR. JUSTICE BRENNAN, MR. JUSTICE MARSHALL, and MR. JUSTICE STEVENS, filed a dissenting opinion in *Mendenhall* in which they concluded that the respondent had been detained in violation of the Fourth Amendment.