FERGUSON, Judge
(dissenting).
The operative facts, in clear and unambiguous language,[1] are as follows: narcotic officers assigned to Miami International Airport, observed appellant looking at a flight monitor and pacing. The officers also observed that appellant looked at people in the ticket line, that the ticket agent made a phone call when appellant was at the head of the line, that appellant attempted unsuccessfully to peel the adhesive flight sticker from his suitcase, and that appellant walked away without purchasing a ticket. The officers then, based on those admittedly innocent observations, stopped appellant in the airport lobby, identified themselves as police officers, requested appellant to identify himself, and sought permission to search his luggage. Appellant was informed that he could refuse. Without responding to the request for the luggage search, appellant quickly placed his suitcase on a lobby counter top, opened it, rummaged through the clothing hastily while responding that it contained only dirty clothes, then closed the suitcase. The officers, without further informing appellant of his rights, requested that he accompany them to the lower level baggage area where a trained dog would sniff the luggage. Appellant complied. Following denial of his motion to suppress, defendant was convicted.
I would reverse on the authority of Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (when officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure subject to Fourth Amendment requirements) and State v. Frost, 374 So.2d *1305 593 (Fla. 3d DCA 1979) (issues concerning governmental restraint of individual liberty depend upon what an ordinary person, faced with a confrontation in the real world with persons who are asserting official authority, would reasonably believe the officers can do).
In United States v. Mendenhall, supra, a sharply divided court upheld an airport seizure on grounds which are not supportive of the States’ argument in this case. Two justices viewed the stop of the suspect as not offensive to the Fourth Amendment. Three justices were of the opinion that the seizure issue should not be considered because it had not been raised in the courts below, but that even if the stop constituted a seizure, the drug courier profile described by narcotic agents satisfied the articulable suspicion requirement. The four dissenting justices believed that even if the court assumed seizure, such seizure was not legal because there was not reasonable grounds for suspecting the defendant of criminal activity at the time of the stop. The single clear proposition that can be extracted from Mendenhall (by a vote of 7-2) is that a stop of this type constitutes a seizure for Fourth Amendment purposes and requires reasonable suspicion.
In Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), decided five weeks after Mendenhall, a majority of the court[2] on facts almost identical, concluded that DEA agents acted unlawfully in approaching a suspect who fit part of the drug courier profile. There the agents approached the defendants in an airport and asked them to produce travel tickets and identification. The issue in Reid, supra, as it was for seven of the nine justices in Mendenhall, supra, was whether under the circumstances of the case, the officers could, as a matter of law, have reasonably suspected the petitioner of criminal activity. Despite the reservation of Justice Powell in his concurring opinion that the Court did not decide the issue of whether a stop for routine identification constitutes a seizure, the majority in both Reid and Mendenhall, supra, proceeded upon the assumption that a seizure had occurred. See Reid, supra at 448 U.S. 441, 100 S.Ct. 2754, 65 L.Ed.2d 894:
The agent’s belief that the petitioner and his companion were attempting to conceal the fact that they were traveling together, a belief that was more an “inchoate and unparticularized suspicion or ‘hunch’ ” .. ., than a fair inference in light of his experience, is simply too slender a need to support the seizure in this case.
See also United States v. Coleman, 450 F.Supp. 433, 439 (E.D.Mich.1978) (Fourth Amendment stop occurs as soon as officers initially approach an individual, identify themselves, and begin to question him) and cases collected in State v. Frost, supra.
More particularly, the seizure of the person in this case is without a founded suspicion, as required in the federal cases discussed. In addition, the silent “consent” to a search of the luggage was given immediately after appellant was stopped. See State v. Frost, supra. Login v. State, supra, is distinguishable because there, narcotic agents had an articulable suspicion of criminal activity (cocaine residue around Login’s nostrils) before they requested identification, proof of destination, and consent to search. I would reject Sizemore v. State, supra, as having been incorrectly decided.
Because I believe the facts support finding a seizure of the persons not founded on a reasonable suspicion of criminal activity and that there was no break in the chain of illegality from the initial stop to the crucial “consent” I find it unnecessary to discuss the secondary issue whether the subsequent dog-sniff of the luggage was based on voluntary consent rather than a mere acquiescence to apparent authority. Taylor v. State, 355 So.2d 180 (Fla. 3d DCA 1978), cert. denied, 361 So.2d 835 (Fla.1978).
I share the concern of the majority that drug trafficking has had a deleterious effect on the quality of life in South Florida and that Miami International Airport is a primary point of entry for illegal drugs. Nonetheless, I am constrained to dissent. Affirmance of this seizure will tend to broaden police powers beyond that which is *1306 still considered minimal due process by federal constitutional standards. Laws subjecting all travelers to reasonable searches for contraband should emanate from the legislative branch of government. Such laws, enacted with safeguards against arbitrary and unreasonable application, and limited to travel terminals, could satisfy both public policy and constitutional dictate.
This court singularly, though a line of cases culminating in this one, has chipped away at the Fourth Amendment in a fashion that has implications far beyond airport terminals and drug couriers. That law enforcement officers may momentarily detain any citizen on the street, request identification, proof of destination, and permission to search for no reason whatsoever without offending the Fourth Amendment is not the rule of Mendenhall, nor is it yet the law of the land. I would further reject the argument that it makes' a legal difference whether the acts are done with a smile or a smirk.

. The Attorney General would argue that appellant was not stopped but merely “contacted,” see State v. Frost, infra at 597, or that this was a “cooperative encounter,” see Schlanger v. State, 397 So.2d 1028 (Fla. 3d DCA 1981) at 1029, or a “pre-detention encounter” see Login v. State, supra at 186. I would reject these inventions as semantic corruptions which ignore reality and otherwise have no legal meaning.

. Justice Rehnquist was the sole dissent.