UNITED STATES of America, Appellee,

v.

Larry MILLER, Appellant.

No. 87–1302.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1987.

Decided Dec. 10, 1987.

---

Lawrence J. Fleming, St. Louis, Mo., for appellant.

Frederick J. Dana, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

FAGG, Circuit Judge.

Larry Miller appeals from his conviction of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Miller argues the district court committed reversible error when it denied his motion to suppress incriminating evidence obtained by the Government in an airport search. We affirm.

In August 1986 Miller and traveling companion Dorothy Brown made a brief trip to Miami, Florida, leaving from Lambert International Airport in St. Louis. Miller purchased the airplane tickets with cash shortly before the flight was scheduled to leave. He and Brown returned to St. Louis two days later. Timothy Brunholtz, an experienced special agent for the Drug Enforcement Administration (DEA), was aware of Miller's brief trip to Miami, a drug-source city, and waited for Miller's return flight. Two other DEA agents working with Brunholtz were in the same general gate area.

Miller and Brown were the last passengers to deplane. Miller carried two small bags and frequently glanced over his shoulder as he walked down the concourse. The agents, who were dressed in casual clothes, continued to observe Miller and Brown as they exited the airport terminal and walked toward a parked car in the airport arrival area. At that point Brunholtz approached them.

Brunholtz showed Miller his DEA identification and asked Miller if they could talk. Miller responded affirmatively. Brunholtz next asked Miller if he would cooperate with him. When Miller agreed, Brunholtz asked to see his airline ticket and some identification. Miller then gave his ticket and his Illinois driver's license to Brunholtz. After observing the name on the ticket matched the name on the driver's license, Brunholtz returned those items to Miller.

Brunholtz again inquired if Miller would cooperate, and Miller asked the agent what he wanted. Brunholtz then requested Miller's permission to search his luggage. Miller answered "Yup" and slid the brown bag toward Brunholtz. Inside the bag, Brunholtz found a paper sack containing dozens of bills in different denominations. In fact, the sack contained $11,000 in cash.

Before searching the other bag, Brunholtz told Miller he would lay the bag's contents on the curb, but asked Miller if he would prefer to go to a private office in the terminal. Miller replied, "Well, that would be fine to go there." At this point, approximately three minutes had passed from the time Brunholtz first approached Miller.

Once in the office area, Brunholtz informed Miller he was not under arrest and asked Miller if he still consented to the search of his luggage. Miller indicated Brunholtz could continue the search. Inside Miller's second bag, Brunholtz found a plastic bag containing a white powdery substance that a later field test indicated was cocaine. Brunholtz then arrested Miller and informed him of his *Miranda* rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After stating he understood his rights, Miller made a number of incriminating statements regarding his past activities as a drug courier.

On appeal Miller argues the Government violated his constitutional rights through its initial contact with him and through the search of his bags. Miller also contends the statements he made regarding his past courier activities should be suppressed because they were the direct result of an illegal seizure and detention.

■ Miller first argues the initial contact and conversation with Brunholtz represented an illegal stop and detention. Specifically, he claims the encounter was unconstitutional because Brunholtz possessed no specific and articulable facts to support a reasonable suspicion of criminal activity. *See Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam); *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Miller thus argues the evidence obtained in the later search must be suppressed. We disagree.

Not every officer-citizen encounter triggers fourth amendment concerns. Thus, the Supreme Court has clearly indicated that a law enforcement officer does not violate the fourth amendment "by merely approaching an individual * * * in [a] public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983) (plurality); *see United States v. Pantazis,* 816 F.2d 361, 363 (8th Cir.1987). Here Brunholtz, like the officer in *Pantazis,* used his knowledge and observations only to approach Miller. The initial contact and the consensual conversation that followed constituted a permissible encounter under the fourth amendment, and thus, we need not reach the question of reasonable suspicion. *See Pantazis,* 816 F.2d at 363.

■ Second, Miller argues Brunholtz' search of his brown bag following their initial conversation violated his fourth amendment rights because Miller did not voluntarily consent to the search. Again, we disagree.

The issue of voluntary consent to search is a question of fact that must be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973); *United States v. Briley,* 726 F.2d 1301, 1304 (8th Cir.1984). Here, Miller affirmatively agreed to a search of his luggage while in a public place. Further, the DEA agents were not in uniform and did not show their weapons. Brunholtz testified he spoke in ordinary conversational tones throughout the encounter with Miller and at no time touched him. In addition, Brunholtz did not retain Miller's license and ticket, but instead promptly returned them to Miller before asking to search his luggage. *See Royer,* 460 U.S. at 501, 103 S.Ct. at 1326 (plurality). After thoroughly reviewing the record, we conclude substantial evidence supports the district court's finding that Miller voluntarily consented to the search of his brown bag.

■ Third, Miller contends he was unconstitutionally seized when the encounter moved to the airport office where the search of his second bag revealed the cocaine. Miller claims he did not feel he was free to walk away from the DEA agents in the parking lot and had no choice but to accompany them to the airport office. He also argues any consent to search he may have given in the office was invalidated by the highly coercive circumstances. We reject these arguments.

After he initially consented to the search, Miller openly agreed to go to the airport office when given the option of continuing the search on the street curb where he stood with Brunholtz. On arriving in the office, Brunholtz told Miller he was not under arrest. Further, while in the office, Miller reaffirmed his previous consent to a search of his luggage. We conclude the district court did not commit error in determining Miller was neither seized nor coerced within the context of the fourth amendment.

Finally, Miller claims although he was informed of his *Miranda* rights, the incriminating statements he made to Brunholtz should be suppressed because they were the result of an illegal detention. *See id.* Because Miller was not subject to an illegal detention, we conclude Miller's claim here is without merit.

Accordingly, we affirm.