**UNITED STATES, Plaintiff**

**v.**

**WALFORD DOUGLAS, Defendant**

Crim. No. 93-176

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 6, 1994

## MEMORANDUM AND ORDER

This matter came before this Court on December 30, 1993 for a hearing on defendant Walford Douglas' motion to suppress cocaine found in his possession when he was searched by United States customs officials at the Cyril E. King Airport in St. Thomas, Virgin Islands. For reasons more fully set forth herein, defendant's motion will be granted.

## FACTS

On October 24, 1993, defendant presented himself, together with his luggage, at the preclearance facility at the St. Thomas airport prior to travelling to Greensborough, North Carolina. At that time, the customs official on duty, Senior Inspector Gloria Lambert, questioned him as a part of the preclearance procedure. Among other things, Lambert learned that Douglas was then unemployed, was travelling with a one-way ticket, intended to return to St. Thomas within three days, and that a friend would be purchasing his return ticket. Her suspicions aroused, Lambert asked Douglas if she could open his luggage, to which he agreed. Inspector Lambert testified that she immediately detected a distinct odor which she associated with cocaine or its derivatives. She inspected the one bag Douglas was carrying by removing all of its contents and, when this visual examination revealed no contraband, she passed the bag through an x-ray machine with negative results. Despite her failure to locate any contraband, Lambert directed Douglas to a secondary search area, where a pat-down was conducted by two male customs agents. The agents instructed Douglas to remove his shoes, as they were trained to do when conducting customs pat-down searches. As Douglas did so, one of the agents, Inspector Milton Sprauve, noticed that the insole of one of his sneakers appeared to be loose. Upon further inspection, plastic bags containing "crack" cocaine were discovered in each of defendant's sneakers.

In his motion to suppress, Douglas has argued that the search violated his Fourth Amendment right to be free from unreasonable searches and seizures[1] and, accordingly, the unlawfully obtained evidence must be suppressed. The government contends that the search was a lawful border search for which neither probable cause

---

[1] See U.S. CONST. amend. IV. The fourth amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment is fully applicable to the Virgin Islands. See United States v. Hyde, VI Bar BBS 93CR65.DT1 (D.V.I. Oct. 21, 1993), appeal and cross-appeal docketed, Nos. 93-7790 & 93-7802 (3d Cir. Dec. 3 & 13, 1993).

nor reasonable suspicion was required.[2] In the alternative, the government argues that Douglas' conduct created a reasonable suspicion that criminal activity was afoot, and that the search was proper under the doctrine announced by the Supreme Court in Terry v. Ohio.[3]

## DISCUSSION

### A. *The Applicability of the Border Search Doctrine*

This Court has recently held that, although the Virgin Islands are not contiguous with the continental United States, and although the Virgin Islands occupies a unique position with respect to customs regulations, the Territory does not constitute a border for purposes of the so-called "border search" exception to the Fourth Amendment. United States v. Hyde, VI Bar BBS 93CR65.DT1 (D.V.I. Oct. 21, 1993), appeal and cross-appeal docketed, Nos. 93-7790 & 93-7802 (3d Cir. Dec. 3 & 13, 1993). Accordingly, when they travel to the continental United States, citizens and other persons lawfully in the United States Virgin Islands are entitled to the full panoply of rights enjoyed by citizens travelling within the United States. Id.

It is clear to the Court that this stop, interrogation, and search of Douglas was conducted as a border search.[4] Because there was no showing that the defendant was not otherwise entitled to the protections of the Fourth Amendment, the motion to suppress must be granted unless there is some other basis for upholding the search, seizure, and arrest.

### B. *The Doctrine of Terry v. Ohio*

It is well-established that, although law enforcement officials must have probable cause before they can obtain a warrant to search persons and their homes, the Fourth Amendment does not prevent law enforcement officials from briefly detaining an individual when the officer has reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot." Terry v. Ohio, 392 U.S. at 30. Under such circumstances, the officer may question

---

[2] See United States v. Ramsey, 431 U.S. 606, 618–19 (1977); Carroll v. United States, 267 U.S. 132, 153–54 (1925).

[3] 392 U.S. 1 (1968).

[4] The search at issue occurred October 24, 1993, merely three days after this Court announced its ruling in United States v. Hyde, supra.

the individual and conduct a protective frisk for weapons. Id. Thus, this Court must determine (1) whether Inspector Lambert had reasonable suspicion to detain the defendant, and (2) whether the pat-down search that was conducted was permissible as a protective frisk under applicable law.

At the hearing on defendant's motion to suppress, the government contended that Inspector Lambert had a reasonable suspicion that Douglas was engaged in criminal activity, namely the transportation of illegal narcotics, based on the following factors: (1) defendant arrived late for his flight; (2) he was travelling to the United States for a relatively brief period; (3) he had purchased a one-way ticket and stated that a friend would provide his return ticket; (4) he was unemployed; (5) Lambert detected an odor which, based upon sixteen years of experience as a customs official, she associated with cocaine. Defendant's counsel has strenuously argued that Inspector Lambert could not reliably detect the smell of cocaine and that the remaining factors she articulated did not create a reasonable suspicion that Douglas was engaged in criminal activity.

█ Based upon the evidence presented, this Court finds that Inspector Lambert did possess reasonable suspicion to detain Douglas for brief questioning. In particular, this Court credits Lambert's testimony that she did detect an odor, that her experience led her to associate the odor with cocaine,[5] and that Douglas' responses to her routine questions,[6] although perhaps not inconsist-

---

[5] The government also introduced testimony of a forensic chemist at the hearing on defendant's motion who stated under oath that cocaine has a distinct odor which he, and presumably other humans, can detect, although he was not aware of any formal training programs that prepare customs officials to recognize the smell of cocaine.

[6] The defendant has not challenged the basis for or propriety of these "routine" questions or the legality of the entire preclearance procedure, nor has the government attempted to articulate any customs-related basis for the questioning and procedures used at the preclearance facility when inspecting passengers bound for the mainland on direct commercial flights. Although the Hyde decision was handed down over two months ago, and the government presumably has researched the basis for its appeal in that case, no effort was made in the defense of this motion to answer the questions raised in that opinion or articulate any justification for these preclearance procedures other than the "border search" exception.

ent with innocent conduct, were also not inconsistent with criminal activity.[7]

■ The ensuing search of defendant, however, was not permissible under the Fourth Amendment. Terry and its progeny clearly instruct that officers may conduct a protective frisk or pat-down of an individual's outer clothing for weapons. See 392 U.S. at 27. The government conceded at oral argument that the purpose of a pat-down is not to locate contraband but to ensure the officer's safety.[8] Although Officer Sprauve testified that customs officials routinely instruct individuals to remove their shoes as part of the pat-down procedure, the government has not presented any authority that would condone such a practice as a Terry frisk.[9] Even a weapon, such as a knife, concealed in a shoe of suspect would pose no immediate threat to the inquiring officer since it would not be readily available unless the suspect made clearly observable movements that would put the officer on notice of the potential danger.

■ Although the transport of illegal drugs through our nation's (and our Territory's) airports is a problem of tremendous proportion, the mere urgency of law enforcement demands is not enough to displace the protections of the Fourth Amendment. See Almeida-Sanchez v. United States, 413 U.S. 266, 273 (1973). The im-

---

[7] See Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty', but the degree of suspicion that attaches to particular types of noncriminal acts"); Reid v. Georgia, 448 U.S. 438, 441 (1980) (per curiam) (noting that "wholly lawful conduct [may] justify the suspicion that criminal activity [is] afoot").

[8] See Sibron v. New York, 392 U.S. 40 (1968).

[9] Of course, if defendant had been engaged in travel across international borders, the search would have been justified without any degree of individualized suspicion whatsoever. As the Second Circuit has observed:

> [T]he removal and search of a person's shoes at a border checkpoint does not amount to a strip search, but rather is an acceptable procedure in a routine border inspection for which no justification is needed beyond the fact that the person involved has just crossed our national boundary.

United States v. Nieves, 609 F.2d 642, 646 (2d Cir. 1979), cert. denied, 444 U.S. 1085 (1980). In Nieves, the defendant had travelled to John F. Kennedy International Airport in New York from Panama. See also United States v. Vega-Barvo, 729 F.2d 1341, 1345 (11th Cir. 1984) ("Both a luggage search and a pat-down or frisk . . . can be legitimately carried out [at a border] on no more than a generalized 'mere suspicion' or 'subjective response' of the customs inspector").

permissibly extensive "pat-down" of defendant, which included elements of a strip search, was clearly conducted under the assumption that the "border search" exception to the Fourth Amendment applies to passengers travelling from St. Thomas to the continental United States. Because the border search doctrine applies only to individuals arriving in the Territory directly from foreign countries or departing to such countries, and because the search of this defendant exceeded the permissible boundaries of a protective pat-down, the items seized by the customs officials must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 484–85 (1963).

## CONCLUSION

Accordingly, it is hereby
ORDERED that defendant's motion to suppress is GRANTED.