OPINION
{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a judgment of the Franklin County Municipal Court dismissing on the motion of defendant-appellee, Tracy A. Reed, a misdemeanor charge of improper handling of a firearm in a motor vehicle in violation of R.C.2923.16(E)(3). Plaintiff assigns the following error:
THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT THE ARRESTING OFFICERS POSSESSED INSUFFICIENT REASONABLE SUSPICION AND IN DISMISSING THE CASE WHERE THE OFFICERS HAD SUFFICIENT REASONABLE SUSPICION TO STOP THE CO-DEFENDANT'S VEHICLE AND WHERE THEY OBSERVED APPELLEE COMMITTING A CRIME.
Because the trial court erred in granting the motion, we reverse.
 {¶ 2} On August 22, 2004, Columbus police officers responded to a house on E. 17th Avenue in Columbus after a woman called 9-1-1 to report that unknown armed assailants had threatened her and accused her of stealing money. At the hearing on defendant's motion, Officer Dan Jones testified that when he and his fellow officer, Ryan McNamara, arrived at the residence, the woman stood outside their cruiser telling them what had happened. She described the suspects as being four black men in either a white car or a four-door dark-colored SUV. According to Officer Jones, as they were conversing the woman suddenly pointed to a passing black Ford Explorer SUV and stated "that's them." (Tr. 11.) The officers followed the vehicle for about one mile while they performed a license plate check. Upon learning the vehicle was registered to a Cedric Reed, the officers pulled the vehicle over; Officer Jones approached the driver and requested his driver's license, registration and proof of insurance.
 {¶ 3} Officer Jones testified, without objection, to what transpired after the vehicle was stopped. Specifically, as the driver reached for his wallet, Officer Jones saw a gun, prompting him to warn Officer McNamara, who was talking to the female passenger, defendant Tracy Reed. Officer Jones got the driver out of the vehicle, and the driver advised he had a permit. Because the driver's gun was concealed, Officer Jones believed he had an offense for which the driver could be arrested. Accordingly, Officer Jones handcuffed the driver and walked him to the front of the cruiser.
 {¶ 4} When Officer Jones yelled to Officer McNamara that the driver had a gun, Officer McNamara yelled back to him, "[s]he's got one too." (Tr. 18.) Officer Jones inquired whether defendant advised that she had a gun, and Officer McNamara replied "[n]o." Officer Jones told Officer McNamara to get defendant out of the car and to remove the gun from her person. Officer McNamara told Officer Jones the gun was concealed by defendant's shirt, and that defendant did not tell him she had a permit. The officers called for a female officer to remove the gun from defendant, and they put both the driver and defendant in the back of the cruiser. The parties agree that, at the time of the stop, both defendant and her husband, driver Cedric Reed, were permitted to carry a concealed weapon pursuant to a valid concealed handgun license ("CHL").
 {¶ 5} Based upon the events that arose out of the stop, both defendant and her husband were charged with improperly handling firearms in a motor vehicle in violation of R.C. 2923.16, which provides that "[n]o person who has been issued a license * * * to carry a concealed handgun under section 2923.125 or 2923.1213 of the Revised Code shall * * * (3) [i]f the person is the driver or an occupant of a motor vehicle that is stopped as a result of a traffic stop or a stop for another law enforcement purpose and if the person is transporting or has a loaded handgun in the motor vehicle in any manner, fail to promptly inform any law enforcement officer who approaches the vehicle while stopped that the person has been issued a license or temporary emergency license to carry a concealed handgun and that the person then possesses or has a loaded handgun in the motor vehicle." Violation of the section renders the person guilty of improperly handling firearms in a motor vehicle, a misdemeanor of the fourth degree. In response, defendant filed a motion to dismiss, that asserted several bases in support of her motion, including claims that the officers had no reasonable suspicion for a traffic stop and that R.C. 2923.16 is unconstitutional on its face.
 {¶ 6} At the conclusion of the hearing, which consisted of the testimony of Officer Jones and the arguments of counsel, the trial court denied the driver's motion to dismiss, but granted defendant's motion. Although defendant argued the statute was unconstitutionally vague, the trial court rejected that argument. Similarly, the trial court found unpersuasive defendant's contention that the officers lacked a reasonable, articulable suspicion to stop defendant's vehicle. The court, however, stated it did not appear defendant was given the same opportunity to respond to the officers' questions that was afforded the driver. "It appears she was asked — from what I heard, testimony of the officer — whether she had a firearm and she responded that she did. And I think she probably acted in a manner that the law anticipated she would, and I would find that the evidence as it has been presented during this hearing is insufficient to support the conduct of the officer as to Mrs. Reed, so I will sustain the motion to dismiss as to Mrs. Reed, but not as to Mr. Reed." (Tr. 50.)
 {¶ 7} In its single assignment of error, the state contends the trial court improperly granted the motion and dismissed the charge. According to the state, the evidence presented at the hearing demonstrated the officers had a reasonable and articulable suspicion of criminal activity that permitted them to stop and detain the vehicle in which defendant rode. Moreover, the state urges that, because the initial vehicular stop was valid, and because officers were justified in approaching and questioning defendant and the driver, they were also permitted to remove defendant from the vehicle and conduct a search once they realized she was carrying a handgun. Given what the officers discovered, the state contends the officers were justified in arresting defendant because she improperly concealed the handgun on her person while in a motor vehicle and failed to promptly notify officers of her CHL.
 {¶ 8} A motion to suppress is a device used to eliminate from a criminal trial evidence that has been secured illegally, generally in violation of a particular amendment to the United States Constitution.State v. French (1995), 72 Ohio St.3d 446, 449. In a hearing on a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Retherford (1994),93 Ohio App.3d 586, 592. Where the trial court's findings of fact are supported by competent, credible evidence, this court is bound to accept them. As a reviewing court, we then determine independently, as a matter of law, whether the facts meet the appropriate legal standard. Id.; Statev. Parrish, Franklin App. No. 01AP-832, 2002-Ohio-3275, at ¶ 14.
 {¶ 9} It is well-established that an automobile stop, with the attendant temporary detention of its occupants, constitutes a seizure under the Fourth Amendment of the United States Constitution. Delawarev. Prouse (1979), 440 U.S. 648, 653, 99 S.Ct. 1391. Generally, the Fourth
Amendment's prohibition of unreasonable searches and seizures bars police from seizing a person without a warrant unless police have probable cause to believe that person has committed a felony. Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223. Police, however, need not have probable cause to detain a person in an investigatory stop, United States v.Brignoni-Ponce (1975), 422 U.S. 873, 881, 95 S.Ct. 2574, but need only have a "reasonable and articulable suspicion that the person seized is engaged in criminal activity." Reid v. Georgia (1980), 448 U.S. 438, 440,100 S.Ct. 2752. Such a stop is a reasonable seizure under the Fourth
Amendment when the police can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868.
 {¶ 10} Here, police were interviewing a crime victim when she pointed to a vehicle and stated "that's them," thus identifying what she thought was the vehicle the perpetrators used. Having no reason to disbelieve her statement, and because the vehicle matched a description she had just given them, the officers pursued the vehicle and pulled it over. Under these facts, the officers relied upon a reasonable and articulable suspicion that the vehicle and, potentially, its occupants had been involved in criminal activity, and their seizure of the vehicle was valid under Terry.
 {¶ 11} Once the vehicle was stopped, and if the officers had a reasonable suspicion that the occupants were dangerous and may gain immediate control over weapons inside the vehicle, the officers were permitted to order the occupants out of the vehicle and to make a protective search of the vehicle for weapons, based upon considerations of officer safety. See, e.g., State v. Bobo (1988), 37 Ohio St.3d 177, paragraph two of the syllabus; State v. Henderson (Nov. 7, 1997), Montgomery App. No. 16016; Michigan v. Long (1983), 463 U.S. 1032,1048-1049, 103 S.Ct. 3469; Pennsylvania v. Mimms (1977), 434 U.S. 106,98 S.Ct. 330. This rule applies to passengers as well as to the driver.Maryland v. Wilson (1997), 519 U.S. 408, 117 S.Ct. 882; State v. Holt
(Oct. 30, 1997), Franklin App. No. 97APA04-550.
 {¶ 12} Here, because the victim of the offense indicated her assailants were armed, Officers Jones and McNamara had a reasonable suspicion the occupants of the victim-identified vehicle were armed, permitting them to approach the occupants to determine who they were and to ascertain whether they were armed. The search of both defendant and the driver also was justified because Officer Jones saw the weapon on the driver's person and then warned Officer McNamara that defendant also may be armed. Once Officer McNamara realized defendant had a concealed weapon on her person, he had not only a reasonable and articulable suspicion of criminal activity justifying the search, but probable cause to arrest defendant.
 {¶ 13} Because the officers did not violate defendant's Fourth
Amendment rights in detaining the vehicle in which she rode and in searching her, the trial court should have scheduled the case for trial to determine whether defendant failed to promptly inform officers that she held a valid CHL. To the contrary, the trial court appears to have determined from the facts presented at the motion hearing that defendant's conduct did not constitute a violation of R.C. 2923.16(E)(3) because defendant "acted in a manner that the law anticipated she would." The court erred in doing so. Although defendant was charged with failing to promptly inform officers of her CHL, the only issues before the court during the motion hearing were the facial constitutionality of the statute and the constitutionality of the initial seizure and search. Whether defendant notified officers promptly was an issue the parties disputed and an issue that should have been subjected to a trial.
 {¶ 14} Indeed, upon a trial of the charge, both parties presumably would have presented additional evidence on the precise issue of whether defendant promptly notified officers of her CHL. For example, the state may have presented Officer McNamara's testimony, or defendant's husband may have testified about defendant's conduct at the time of the stop. Because the purpose of the suppression hearing was only to test preliminary issues concerning the facial constitutionality of the statute and the constitutional validity of the initial stop and search, the trial court should have addressed only those issues and should not have proceeded to acquit defendant of violating R.C. 2923.16(E)(3). We further note that because defendant did not file a cross-assignment of error regarding the trial court's conclusion that the statute at issue is facially constitutional, and because, depending on the outcome of the trial, the issue may be moot, we do not address the trial court's ruling on defendant's claims of facial unconstitutionality.
 {¶ 15} Accordingly, the state's single assignment of error is sustained, and this case is remanded to the Franklin County Municipal Court for further proceedings.
Judgment reversed and case remanded.
Bryant, Sadler and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.