*241
 
 KELLY, Judge.
 

 The State appeals from a trial court order granting Rafiat Jimoh’s motion to suppress evidence seized after Jimoh was discovered unresponsive behind the wheel of her parked car. The State argues that officers had reasonable suspicion to justify an investigatory stop of Jimoh’s vehicle based on her condition, the fact that the engine was running and the headlights were on, and because the odor of alcohol could be detected coming from the vehicle. We agree and reverse.
 

 Deputy Johnson observed Jimoh sitting in the driver’s seat of her car with the engine running in the parking lot of a convenience store. The deputy testified that Jimoh appeared to be asleep or looking down at her telephone. After inquiring and discovering that Jimoh had been parked there for approximately ten to fifteen minutes, Deputy Johnson called for back-up and Deputy McCalla, an experienced DUI investigator, responded. When Deputy McCalla arrived, he observed a woman “slumped over” at the wheel of her vehicle. The engine was running and the headlights were on. The driver’s side window was open about four inches and Deputy McCalla could smell alcohol coming from the vehicle. Both deputies attempted to wake Jimoh by banging on the car roof and doors. When she did not respond, Deputy McCalla reached into the vehicle, shut off the engine, opened the door, and shook Jimoh until she woke up. He then had Jimoh get out of the car, and based on her bloodshot and glassy eyes together with the odor of alcohol coming from the vehicle, proceeded to conduct a DUI investigation that led to Jimoh’s arrest.
 

 The trial court granted Jimoh’s motion to suppress finding that the facts were indistinguishable from those in
 
 Danielewicz v. State,
 
 730 So.2d 363 (Fla. 2d DCA 1999). We disagree. In
 
 Danielewicz,
 
 the officer observed the defendant’s car lawfully parked in the parking lot of a restaurant with the headlights on and the engine running. The defendant was in the driver’s seat apparently asleep. When the officer knocked on the car window, the defendant looked at the officer but did not unlock the door. The officer had to ask the defendant five times to get out of the car. It was after the defendant unlocked the car door and got out of the car that the evidence leading to her DUI arrest was discovered.
 

 On appeal, this court concluded that the investigative stop occurred when the officer ordered Danielewicz out of the car. We held that the investigative stop was not lawful because the officer did not articulate a well-founded suspicion of criminal activity:
 

 In order to justify an investigative stop, the officer must have a well-founded suspicion that the subject of the stop is or is about to become involved in criminal activity. In this case the officer did not articulate a well-founded suspicion of criminal activity. While the officer suspected that Danielewicz was inebriated because she was asleep in her car, he also stated that people sleep in their cars without criminal implication. The officer did not testify that he was concerned for the driver’s personal health. The actions of Danielewicz were susceptible of being interpreted as innocent conduct; therefore, [the officer] needed additional factors before he could validly stop her.
 

 730 So.2d at 364. In contrast, Deputy McCalla testified that when he came up to Jimoh’s car, he could smell alcohol through a window that was open approximately four inches. Despite banging on the roof and doors of the vehicle and calling out to Jimoh, she did not respond. Based on his
 
 *242
 
 observations of Jimoh, including her unresponsiveness and the smell of alcohol, Deputy McCalla believed further investigation was warranted. It was at this point that he woke Jimoh and asked her to get out of the car. Accordingly, we conclude that when the investigatory stop occurred, the totality of the circumstances provided Deputy McCalla with a reasonable suspicion that Jimoh may have been impaired, and therefore the investigatory stop was justified.
 

 We reject Jimoh’s contention that the circumstances observed by the officers were consistent with innocent conduct; therefore, they could not have given the officers the requisite founded suspicion to justify an investigatory stop. “A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct.”
 
 United States v. Arvizu,
 
 534 U.S. 266, 277, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). As explained by the Supreme Court:
 

 We said in
 
 Reid v. Georgia,
 
 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam), “there could, of course, be circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.”
 
 Id.,
 
 at 441, 100 S.Ct., at 2754. Indeed,
 
 Terry
 
 itself involved “a series of acts, each of them perhaps innocent” if viewed separately, “but which taken together warranted further investigation.” 392 U.S., at 22, 88 S.Ct., at 1881;
 
 see also [United States v.] Cortez,
 
 supra, 449 U.S. [411] at 417-419, 101 S.Ct., at 694-696, 66 L.Ed.2d 621. We noted in
 
 Gates,
 
 462 U.S. [213] at 243-244, n. 13, 103 S.Ct. [2317] at 2335 n. 13, 76 L.Ed.2d 527, that “innocent behavior will frequently provide the basis for a showing of probable cause,” and that “[i]n making a determination of probable cause the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.” That principle applies equally well to the reasonable suspicion inquiry.
 

 United States v. Sokolow,
 
 490 U.S. 1, 9-10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (footnote omitted). We therefore reverse the trial court’s order granting Jimoh’s motion to suppress and remand for further proceedings.
 

 Reversed and remanded.
 

 WHATLEY and NORTHCUTT, JJ., Concur.