OPINION.
The state appeals from the trial court's orders granting a motion to suppress evidence obtained after the police stopped a truck driven by the defendant-appellee, Brian Frank, based both upon the suspicion that he was driving while intoxicated and upon the fact that he was impeding traffic by driving well below the speed limit. The issue is whether the arresting officer's suspicion was justified, based upon information she had earlier obtained from another police officer who had seen Frank staggering from his truck before entering a bar, as well as her own observations of Frank's unusually slow and overly cautious driving. We hold that the state met its burden of establishing that the intrusion was justified within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution.
 FACTS
About 2:00 a.m. on August 30, 1998, Cincinnati Police Sergeant Dawn Sherman, looking out a restaurant window, saw Frank staggering away from a blue Dodge truck parked on Ludlow Avenue. She saw him trip on the curb and then enter a bar. Sgt. Sherman then stopped Officer Julie McKeel (nee Reichow) and several other police officers and alerted them to a possible DUI. Sgt. Sherman related her observations to McKeel and the other officers, but explained that she had not seen the suspect operate the truck. She gave Officer McKeel the truck's description and license number.
Thirty minutes later, Officer McKeel, while operating radar on Clifton Avenue, saw the same Dodge truck described by Sgt. Sherman turn from Ludlow Avenue onto Clifton Avenue. Officer McKeel testified that she followed the truck in her cruiser, noting that it was traveling between 15 to 20 miles per hour notwithstanding a posted speed limit of between 25 to 35 miles per hour. She stated that she saw the truck's brake lights flash continuously as she followed the truck for about six blocks. According to Officer McKeel, the truck remained in the right lane south on Clifton Avenue, turned east onto McMicken, and then south back onto Clifton.
Officer McKeel testified that traffic around the truck, which she described as heavy on McMicken because the bars were closing, was proceeding at the posted speed limit. She testified that she observed southbound vehicles in the right lane pull around the truck, pass in the left lane, and then return to the right lane. Officer Robert Rosey, who had also been alerted by Sergeant Sherman about the possible DUI, testified that he observed traffic going around both the truck and Officer McKeel's cruiser. Officer Rosey testified that, in his view, the truck was "impeding traffic." He stated that he pulled his cruiser next to Officer McKeel's on Clifton Avenue to inquire if she needed assistance. According to Officer Rosey, Officer McKeel told him she was following a possible DUI and requested his assistance as a back-up officer.
Eventually, Officer McKeel stopped the truck at Clifton and Warner Street. She testified that she had arrived at the conclusion that the driver, Frank, was impeding traffic, meaning that cars following him were not able to go the normal speed limit without passing. She described Frank's driving as causing a "traffic tie-up." She testified that she also found it unusual that Frank was continuously touching his brakes. Asked directly why she finally pulled Frank over, Officer McKeel stated:
There's a number of reasons. My sergeant advised me to be on the lookout for a possible person driving under the influence fitting the description, which was a male white, in that vehicle, which was a Dodge Ram pickup truck, that license plate on it.
It was her opinion that he was possibly under the influence, and she was advising, for his safety and others around that area, if he is driving [a] vehicle, to investigate to see if he is under the influence.
His driving ability, driving underneath the speed limit, causing impeding the traffic, causing other people, as well as officers, to drive around him too, because he's impeding the flow of traffic, was also another concern of mine, causing a hazard, causing other people to drive around; if he's okay, there's something else wrong.
After Frank was stopped, Sgt. Sherman arrived on the scene and positively identified him as the person she had earlier seen staggering out of his truck toward a bar.
Frank was charged with driving under the influence of alcohol (R.C. 4511.19[A][1]), operating a motor vehicle with a prohibited concentration of alcohol (R.C. 4511.19[A][3]), and impeding or blocking traffic (Cincinnati Municipal Code 506-12).
 DECISION OF THE TRIAL COURT
In its orders granting Frank's motion to suppress, the trial court found that Officer McKeel did not have reasonable suspicion to believe that Frank had violated Cincinnati Municipal Code 506-12. The relevant portion of that ordinance provides, "No person shall operate a vehicle at such a slow speed as to impede or block the reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law." The trial court found that there was "no testimony" that Frank's driving blocked or impeded traffic. The trial court thus ruled that Frank's "driving ability as observed by the officer did not meet the reasonable articulable suspicion standard of the law to form a legal[ly] sufficient basis for a constitutional automobile stop."
Further, the trial court found that Officer McKeel did not have a reasonable suspicion that Frank was driving while intoxicated. The trial court based this conclusion on the fact that Sgt. Sherman did not observe Frank violate any traffic laws. The trial court placed specific emphasis upon the fact that Sgt. Sherman did not see Frank actually leaving the truck or actually drinking. According to the trial court, Sgt. Sherman merely had a "hunch" that Frank was intoxicated. The trial court stated, "[Sgt. Sherman] was not close enough to [Frank] or [armed with] enough information to support her tip with reasonable articulable suspicion of intoxication or impaired operation of a motor vehicle. Thus, Sgt. Sherman's tip is unreliable and it does not form a sufficient legal basis for Officer [McKeel] to make an investigatory stop of [Frank's] vehicle."
After the trial court granted Frank's motion to suppress, the state filed its appeals under authority of Crim.R. 12(J).
 ANALYSIS
In its sole assignment of error, the state argues that the trial court erred in granting the motion to suppress, because Officer McKeel had a reasonable and articulable suspicion to stop Frank. Although the state inexplicably rests its argument on whether there was reasonable suspicion that Frank was in violation of a city ordinance against impeding traffic, we hold that Officer McKeel had reasons to suspect him of both violating the ordinanceand driving while intoxicated.
As this court has observed with respect to warrantless police stops:
The burden is on the state to provide * * * justification [for the stop] by demonstrating that the police officer acted with "reasonable suspicion." Terry v. Ohio (1968), 392 U.S. 1, 21,88 S.Ct. 1868, 1880, 20 L.Ed.2d 889. "Reasonable suspicion" is a term of art that is not "readily or even usefully, reduced to a neat set of legal rules." United States v. Sokolow (1989),490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, quoting Illinoisv. Gates (1983), 462 U.S. 213, 232, 103 S.Ct. 2317, 2329,76 L.Ed.2d 527. The term connotes something less than probable cause, but something more than an "inchoate and unparticularized suspicion or `hunch.'" Terry, supra, at 28, 88 S.Ct. at 1883.
State v. Ramey (1998), 129 Ohio App.3d 409, 414, 717 N.E.2d 1153
1156.
The determination of whether the police acted with reasonable suspicion in a given case entails a consideration of the totality of the circumstances. United States v. Cortez
(1981), 449 U.S. 411, 417, 101 S.Ct. 690, 695. Significantly, reasonable suspicion may be premised upon conduct that it is not itself illegal. Sokolow, supra, at 9, 109 S.Ct at 1586, citingReid v. Georgia (1980), 448 U.S. 438, 441, 100 S.Ct. 2752. As we pointed out recently in State v. Jones (Dec. 3, 1999), Hamilton App. No. C-990125, unreported:
"[I]t is a common misperception that, in order to effectuate aTerry stop, the police must actually observe the person engaging in criminal activity. See State v. Marsh (Sept. 3, 1999), Hamilton App. Nos. C-980788 and C-980789, unreported; State v.Ramey (1998), 123 Ohio App.3d 409 [129 Ohio App.3d 409], 717 N.E.2d 1153. This is simply not true. If it were, there would be no need for a Terry stop, since the observation of a person engaging in criminal activity would be probable cause to arrest. * * * *
Terry itself did not involve any overt illegal activity; rather, all the detective observed in that case was the defendant and his confederates loitering outside a store in the middle of the day, pausing to stare in the window and then conferring among themselves. Notwithstanding the perfectly legal nature of their presence in front of the store, the United States Supreme Court held that an experienced detective was justified in suspecting the confederates of planning a daylight robbery and was therefore entitled to stop and ask them questions. It is important to remember, in this regard, that a Terry stop is an investigatory
tool and does not require certitude, or probability, but only a reasonable suspicion, based upon specific, articulable facts, that criminal activity is afoot.
Review of the trial court's findings of fact and conclusions of law resulting from a suppression hearing involves a two-step inquiry. First, this court must review the trial court's findings of historical fact only for clear error, giv[ing] due weight to inferences drawn from those facts" by the trial court.Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657,1663. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. This de novo determination is "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." Id. at 696-697,116 S.Ct. at 1661-1662.
The trial court concluded that, despite the testimony of Officers McKeel and Rosey to the contrary, McKeel did not have reasonable suspicion to believe that Frank had violated Cincinnati Municipal Code 506-12. The historical facts illustrate, however, that the trial court did not challenge the credibility of the police officers' testimony as to how Frank was driving the truck. Rather, the trial court arrived at solely a legal conclusion when it stated, "The ordinance does not require a driver to drive at the speed limit; likewise, it does not bar a driver from driving less than the speed limit. The Defendant's driving ability as observed by the officer did not meet the reasonable articulable suspicion standard of the law to form a legal[ly] sufficient basis for a constitutional automobile stop."
If, as the trial court apparently found, the testimony of the police officers was credible, then it was required to conclude, as a matter of law, that there was an objective justification for the warrantless stop of Frank. The test is not whether Frank would have been found guilty beyond a reasonable doubt if he had gone to trial on the charge of violating the ordinance. Rather, the test is whether Officer McKeel articulated specific facts upon which a reasonable suspicion could be based that Frank had violated the law. See State v. Chatton (1984), 11 Ohio St.3d 59,463 N.E.2d 1237. Here, it is undisputed that Frank was traveling ten to twenty miles per hour below the speed limit, continually touching his breaks and causing traffic to pass him. The only question is whether these facts could have objectively supported Officer McKeel's belief that Frank, in the language of the ordinance, was driving "at such a slow speed as to block or impede the reasonable flow of traffic." It is irrelevant whether a jury might later disagree with Officer McKeel that Frank's driving was sufficiently slow, beyond a reasonable doubt, to warrant the citation. As the United States Supreme Court has made clear, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place" in determinations of probable cause or reasonable suspicion. Illinois v. Gates (1983), 462 U.S. 213, 235,103 S.Ct. 2317, 2330, quoted in State v. George (1989), 45 Ohio St.3d 325,329, 544 N.E.2d 640, 644; see, also, State v. Ulis (1992),65 Ohio St.3d 83, 600 N.E.2d 1040, and State v. Rollins (Aug. 13, 1999), Hamilton App. Nos. C-980815, C-980816, and C-980817, unreported.
We hold as a matter of law that the facts were sufficient to objectively support Officer McKeel's belief that Frank was impeding traffic by his unusually slow driving.
Furthermore, we hold that Officer McKeel's stop of Frank's truck was lawful under the Fourth Amendment because, under the totality of the circumstances, she had a reasonable, articulable suspicion that Frank was driving while intoxicated. As noted, the trial court concluded that the information Officer McKeel received was "unreliable" as a matter of law because Sgt. Sherman had not actually seen Frank operate his motor vehicle or take a drink. Neither observation was required, however, in order to make Sgt. Sherman a reliable source of information.
It is well settled that police officers are entitled to rely upon information imparted to them by their fellow officers. See UnitedStates v. Hensley (1985), 469 U.S. 221, 105 S.Ct. 675; Maumee v.Weisner (1999), 87 Ohio St.3d 295, 299, 720 N.E.2d 507, 510, 511. Indeed, if the officer imparting the information has a reasonable suspicion to make a stop, there is no need for the detaining officer to have any independent grounds for suspecting criminal behavior. Rather, she or he may rely entirely on the information given by the imparting officer. This is true even if the information appears in the form of a dispatch or flyer. Id.
In the instant case, it is important to note that Officer McKeel, when she stopped Frank, had two distinct types of information. First, she had the information given to her by Sgt. Sherman that Frank appeared to be stumbling drunk as he went into a bar. She was entitled to accept this information, coming from not only a fellow officer but a superior officer, as true. Second, thirty minutes later she made her own observation of Frank, whom she recognized from the description of his truck, driving much slower than the speed limit allowed, repeatedly touching his brakes, and causing other traffic to pass him, for no observable reason. Under the totality of the circumstances, Officer McKeel would have been hard-pressed to resist the conclusion that the reason Frank was driving so slow was that he was intoxicated.
We hold as a matter of law that Officer McKeel's own observations, when combined with information she had received earlier from Sgt. Sherman, were sufficient to create specific, articulable facts justifying her suspicions that Frank was driving while intoxicated and impeding traffic. The judgments of the trial court are therefore reversed, and these causes are remanded to the trial court for trial or for further proceedings in accordance with the law and this Opinion.
Judgments reversed and causes remanded.
 SUNDERMANN and SHANNON, JJ., concur.
RAYMOND E. SHANNON, retired, from the First Appellate District, sitting by assignment.